UNITED GAS, COKE & CHEMICAL WORKERS OF AMERICA, LOCAL 18, C. I. O., and another, Appellants, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD and another, Respondents.

*May 6—July 12, 1949.*

*Max Raskin* of Milwaukee, for the appellants.

For the respondent Wisconsin Employment Relations Board there were briefs by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

For the respondent Milwaukee Gas Light Company there were briefs by *Miller, Mack & Fairchild,* and oral argument by *J. Gilbert Hardgrove* and *Charles H. Oldfather, Jr.,* all of Milwaukee.

BROADFOOT, J. The material allegations contained in the amended complaint may be summarized as follows: That the defendant Milwaukee Gas Light Company is a public utility; that the plaintiff Lansing is, and for many years has been, an employee of said company; that the plaintiff union is a voluntary labor organization; that it is the bargaining representative of the employees of the defendant gas company; that

the plaintiff union and the employer entered into a contract covering rates of pay, hours of work, and other conditions of employment for the period of one year from and after June 1, 1948; that the plaintiff union was seriously hampered in its collective-bargaining efforts prior to the execution of that contract by reason of sec. 111.62, Stats., which prohibits employees from going on strike or quitting work in concert or from causing any work stoppage in any essential public-utility service under penalty of being guilty of a criminal offense, which thereby prevents employees from exercising their only effective means of bargaining collectively; that plaintiffs are about to begin negotiations with the defendant gas company for a new contract starting June 1, 1949, and that they will be similarly handicapped in their bargaining efforts if the relief sought herein is not granted; that the defendant Wisconsin Employment Relations Board claims jurisdiction of the employer and of the union with the right to enjoin and restrain the union and its members from quitting in concert, from calling a strike, or from going out on strike, or from causing any work stoppage; that the defendant Gas Company will petition the board pursuant to sec. 111.54; that the defendant Gas Company and its employees are subject to the National Labor Relations Act for the reason that the company is engaged in the production of goods and furnishing of services affecting commerce and that the furnishing of such services affects and controls the flow of goods in interstate commerce, and that the state statute complained of is in conflict therewith and violative thereof; that said statute is in conflict with secs. 1, 2, 4, and 22, of art. I of the constitution of the state of Wisconsin and the Thirteenth amendment to the constitution of the United States.

We have no findings of fact before us, but upon the filing of a demurrer all of the well-pleaded facts are accepted as true for the purpose of the disposition of this controversy.

We are first confronted with a fundamental rule of law that the constitutionality of a statute is not to be determined as a hypothetical question or upon assumed facts or unreal possibilities. The court should not anticipate a question of constitutional law before it is to be applied to the precise facts before it and should not attempt to test the operation of a law under every conceivable set of circumstances. This rule is illustrated by the following quotations from prior decisions of this court:

"Sound judicial policy precludes the court from considering the question of the constitutionality of a legislative act unless a decision respecting its validity is essential to the determination of some controversy calling for judicial solution." *State ex rel. Rosenhein v. Frear,* 138 Wis. 173, 176, 119 N. W. 894.

"The legislature, subject to the constitutions of the United States and of this state, is supreme in its particular field, and this court will not declare laws unconstitutional unless it clearly appears beyond reasonable doubt that they contravene constitutional provisions. See *Payne v. Racine,* 217 Wis. 550, 259 N. W. 437; *Petition of Breidenbach,* 214 Wis. 54, 252 N. W. 366; *Doering v. Swoboda,* 214 Wis. 481, 253 N. W. 657; *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 189 N. W. 564, and the numerous earlier decisions cited therein." *State ex rel. Atty. Gen. v. Wisconsin Constructors,* 222 Wis. 279, 284, 268 N. W. 238.

"A constitutional question will not be decided until it is brought directly in issue by the facts involved in the instant case." *Democrat Printing Co. v. Zimmerman,* 245 Wis. 406, 411, 14 N. W. (2d) 428.

Therefore, upon this record, we can only determine whether or not ch. 414, Laws of 1947, is a valid and constitutional enactment. The plaintiffs contend that it is not because it contains unlawful delegations of legislative and judicial powers. The extent to which the legislature may delegate legislative power has received the attention of this court many times. This question was reviewed in *State ex rel. Wisconsin*

*Inspection Bureau v. Whitman,* 196 Wis. 472, 505, 220 N. W. 929. In that case the rule was stated as follows :

"It is considered that the constitutional aspects of administrative law have been so far developed by statute and decision as to indicate in a general way the line which separates that kind of legislative power which may not be delegated from that kind which may be delegated. The power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate,—is a power which is vested by our constitutions in the legislature and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose, in the language of Chief Justice MARSHALL 'to fill up the details;' in the language of Chief Justice TAFT 'to make public regulations interpreting the statute and directing the details of its execution.' It is legislative power of the latter kind which is oftentimes called the rule-making power of boards, bureaus, and commissions."

This rule has been quoted and followed since that time. In this case there can be no question as to the power of the legislature to declare whether or not there shall be such a law. The public has a vital interest in the continued operation of essential public-utility services. This law was enacted for the benefit and protection of the rights of the public. Nor can there be any successful challenge of the determination of the general purpose or policy to be achieved by the law as stated in sec. 111.50, Stats. That leaves only the question of whether or not the legislature properly fixed the limits within which the law shall operate. In other words, Are there sufficient standards set up within the law for the guidance of arbitrators who may be appointed thereunder?

The first standard is set up in sec. 111.50, Stats. The standard sought to be achieved by the statute is "the prompt,

peaceful, and just settlement of labor disputes between public-utility employers and their employees which cause or threaten to cause an interruption in the supply of an essential public-utility service to the citizens of this state." Further standards are set up in secs. 111.57 (3) and 111.58 in the following language:

". . . the factors, among others, to be given weight by the arbitrator in arriving at decision, shall include:

"(a) Comparison of wage rates or other conditions of employment of the utility in question with prevailing wage rates or other conditions of employment in the local operating area involved;

"(b) Comparison of wage rates or other working conditions with wage rates or other working conditions maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions in the local operating area involved;

"(c) The value of the service to the consumer in the local operating area involved;

"(d) Where a public-utility employer has more than one plant or office and some or all of such plurality of plants or offices are found by the arbitrator to be located in separate areas with different characteristics, consideration shall be given to the establishment of separate wage rates or schedule of wage rates and separate conditions of employment for plants and offices in different areas;

"(e) The overall compensation presently received by the employees having regard not only to wages for time actually worked but also to wages for time not worked, including (without limiting the generality of the foregoing) vacation, holidays, and other excused time, and all benefits received, including insurance and pensions, medical and hospitalization benefits and the continuity and stability of employment enjoyed by the employees. The foregoing enumeration of factors shall not be construed as precluding the arbitrator from taking into consideration other factors not confined to the local labor market area which are normally or traditionally taken into consideration in the determination of wages, hours and working conditions through voluntary collective bargaining or arbitration between the parties."

"111.58 *Standards for arbitration.* The arbitrator shall not make any award which would infringe upon the right of the employer to manage his business or which would interfere with the internal affairs of the union."

These provisions of the statute are as definite as many others set up by the legislature and approved by this court. The power to fix and determine reasonable rates and reasonable service in the case of public utilities has been upheld. Every employer is now required to furnish a safe place of employment and the rules of the industrial commission ascertaining and fixing reasonable standards under that delegation of power have been upheld. It is needless to review all of the powers conferred upon administrative agencies by the legislature, but there are many.

Upon the record here there is no question of the delegation of judicial power. This question and other contentions and arguments of the plaintiffs can be disposed of best when a case involving a particular question is presented and fully argued. If any person or agency, in the enforcement of the law, should attempt to usurp unlawful legislative or judicial powers there is an adequate remedy.

"We pointed out in *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929, that the legislature has the power in the creation of subordinate boards to limit their jurisdiction and prescribe their methods of procedure. If when created such boards exceed their powers or do not proceed in accordance with the established law, they may be kept within their jurisdiction and compelled to proceed in accordance with law by the exercise of the judicial power vested in the courts." *State ex rel. Progreso D. Co. v. Brokers Board,* 202 Wis. 155, 166, 231 N. W. 628.

Sub. (1) of sec. 111.57, Stats., reads as follows:

"The arbitrator shall promptly hold hearings and shall have the power to administer oaths and compel the attendance of witnesses and the furnishing by the parties of such information

as may be necessary to a determination of the issue or issues in dispute. Both parties to the dispute shall have the opportunity to be present at the hearing, both personally and by counsel, and to present such oral and documentary evidence as the arbitrator shall deem relevant to the issue or issues in controversy."

Under this provision it is contended that the arbitrator could unduly limit the introduction of evidence to matters deemed relevant by him. However, this section must be considered in connection with sec. 227.10, Stats., which reads as follows:

"In contested cases:

"(1) Agencies shall not be bound by common-law or statutory rules of evidence. They shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony. They shall give effect to the rules of privilege recognized by law. Basic principles of relevancy, materiality and probative force, as recognized in equitable proceedings, shall govern the proof of all questions of fact.

"(2) All evidence, including records and documents in the possession of the agency of which it desires to avail itself, shall be duly offered and made a part of the record in the case. Every party shall be afforded adequate opportunity to rebut or offer countervailing evidence.

"(3) Agencies may take official notice of any generally recognized fact or any established technical or scientific fact; but parties shall be notified either before or during hearing or by full reference in preliminary reports or otherwise, of the facts so noticed, and they shall be afforded an opportunity to contest the validity of the official notice."

The provisions of this section would apply as well as sec. 111.57 (1), Stats., in all contested cases before the arbitrator.

During the consideration of this case the court was mindful of another fundamental rule of law requiring that when reasonably possible a statute be held valid.

"This court is bound to give to an act a construction that will avoid constitutional objections to its validity if it will bear it. *Peterson v. Widule*, 157 Wis. 641, 147 N. W. 966; *Palms v. Shawano County*, 61 Wis. 211, 21 N. W. 77; *State ex rel. Chandler v. Main*, 16 Wis. *398; *Atkins v. Fraker*, 32 Wis. 510; *Attorney General v. Eau Claire*, 37 Wis. 400; *State v. Eau Claire*, 40 Wis. 533; *Bound v. Wisconsin Central R. Co.* 45 Wis. 543. This rule applies even though the construction which leads in this direction is not the most obvious or natural construction of the act. *Johnson v. Milwaukee*, 88 Wis. 383, 60 N. W. 270." *State ex rel. Wisconsin Dev. Authority v. Dammann*, 228 Wis. 147, 190, 277 N. W. 278, 280 N. W. 698. See also *State v. Coubal*, 248 Wis. 247, 21 N. W. (2d) 381.

From the record the demurrer was properly sustained.
*By the Court.*—Judgment affirmed.