IN THE MATTER OF THE ARBITRATION BETWEEN NEW JERSEY BELL TELEPHONE COMPANY, A CORPORATION OF NEW JERSEY, APPELLANT ON APPEAL, AND COMMUNICATIONS WORKERS OF AMERICA, NEW JERSEY TRAFFIC DIVISION NO. 55, CIO, RESPONDENT ON APPEAL, AND BOARD OF ARBITRATION CONSTITUTED UNDER CHAPTER 38, LAWS OF 1946; CHAPTERS 47 AND 75, LAWS OF 1947; CHAPTER 308, LAWS OF 1949 AND CHAPTER 14, LAWS OF 1950, AND WILLIAM HOPE MARTIN, PUBLIC MEMBER AND CHAIRMAN OF SAID BOARD; ARTHUR LESSER, JR., PUBLIC MEMBER OF SAID BOARD; ARTHUR R. LEWIS, PUBLIC MEMBER OF SAID BOARD; WILLIAM DUNN, LABOR MEMBER OF SAID BOARD; AND HAROLD W. LORD, INDUSTRY MEMBER OF SAID BOARD, AND THE NEW JERSEY STATE BOARD OF MEDIATION IN THE DEPARTMENT OF LABOR AND INDUSTRY, ADDITIONAL RESPONDENTS ON APPEAL.

Superior Court of New Jersey
Appellate Division

Argued June 26, 1950—Decided August 8, 1950.

See also 9 *N. J. Super.* 124, 75 *A.* 2d 284.

114

Before Judges McGeehan, Colie and Eastwood.

*Mr. Thomas Glynn Walker,* and *Mr. F. Mark Garlinghouse* of the New York Bar, argued the cause for appellants; *Messrs. Joseph Weintraub, Frederic W. Nixon* and *Frank P. Combs,* on the brief (*Mr. Thomas Glynn Walker,* attorney).

*Mr. Israel B. Greene,* and *Mr. Henry Mayer* of the New York Bar, argued the cause for respondents; *Mr. Bernard Hellring,* on the brief (*Messrs. Greene & Hellring,* attorneys).

*Mr. Benjamin C. Van Tine* argued the cause for the State of New Jersey (*Mr. Theodore D. Parsons,* Attorney General, attorney).

The opinion of the court was delivered by

McGeehan, S. J. A. D. This appeal is from an award of a statutory Board of Arbitration, made under the provisions of *L.* 1946, *c.* 38, as amended and supplemented by

*L.* 1947, *c.* 47; *L.* 1947, *c.* 75, and *L.* 1949, *c.* 308. New Jersey Bell Telephone Company, a public utility corporation incorporated under the laws of this State (hereinafter referred to as the "Company") is the appellant and Communications Workers of America, New Jersey Traffic Division No. 55, CIO (hereinafter referred to as the "Union"), is the respondent.

Following the expiration of a collective bargaining contract between the Company and the Union, a labor dispute involving the terms and conditions to be incorporated in a new collective bargaining contract arose between the Company and the Union. The dispute involved demands for changes in the wages, hours and working conditions of approximately eleven thousand telephone operators and other employees in the Traffic Department of the Company.

Pursuant to the provisions of sections 8 to 12, inclusive, of *L.* 1946, *c.* 38, then in effect (since repealed by *L.* 1950, *c.* 14), a fact-finding Panel was established to hear and make recommendations with respect to the issues in dispute between the Company and the Union. The Panel made its recommendations on February 20, 1950.

Collective bargaining between the Company and the Union was resumed following issuance of the Panel's recommendations, but no agreement was reached. The labor dispute continued and on March 1, 1950, the Governor, finding that the threat of a strike existed, took possession of the plant, equipment and facilities of the Company, pursuant to the provisions of the Act. Thereafter, the Governor appointed three persons and confirmed the designation of one person each by the Company and the Union to serve as members of a Board of Arbitration (hereinafter referred to as the "Board") to hear and determine the dispute between the Company and the Union.

The five members constituting the Board held hearings and received evidence with respect to the matters in dispute, and concluded the hearings on March 28, 1950. The order of the Board, dated April 19, 1950, was filed with the Gover-

nor on April 20, 1950. This order was signed by all five members, but was endorsed with a notation that as to certain specified items of the order the Union member dissented and as to certain specified items the Company member dissented. On May 25, 1950, the "Findings of Fact and Decision" of the Board was filed; it was signed by the three public members and the Union member, but the signature of the Union member was accompanied with a notation "Except as indicated in accompanying Dissenting Opinion." On the same day the Company member filed a "Dissent and Findings" and the Union member filed a "Dissenting Opinion."

## I.

The Company contends that the statute is unconstitutional because, by prohibiting strikes and compelling arbitration of labor disputes in public utilities, it conflicts with the authority of the Federal Government, Congress having preempted the field by enactment of the Labor-Management Relations Act of 1947. It is conceded that the identical question was presented in *Van Riper v. Traffic Telephone Workers' Federation of N. J.*, 2 N. J. 335 (1949), and that our Supreme Court there held that our statute is not in conflict with the federal law. The Company argues, however, that since the decision in the *Van Riper case,* the United States Supreme Court, in *International Union of U. A. A. & A. v. O'Brien* (70 *S. Ct.* 781, 94 *L. Ed.* —— (May 8, 1950)), has made it clear that the decision in the *Van Riper case* on this point cannot stand. But the point raised and decided in the *Van Riper case* was neither raised nor decided in the *O'Brien case*. In the latter case the constitutionality of the strike vote provision of the Michigan Labor Mediation Law was before the court and it was held unconstitutional because it conflicted with the National Labor Relations Act of 1935, as amended by the Labor-Management Relations Act of 1947. The court there said the conflict existed because the federal statute permits strikes at a different and usually earlier time than the Michigan law and it does not require a majority

authorization for any strike and the bargaining unit established in accordance with federal law may be inconsistent with that required by the state regulation. We note, also, that the Labor-Management Relations Act of 1947 (29 *U. S. C. A.*, § 152(2)) expressly excludes "any state or political subdivision thereof" in defining "employer" as used in that Act. In this connection, our statute (*L.* 1947, *c.* 47, § 3, as amended by *L.* 1947, *c.* 75, § 4) provides that when the Governor seizes a utility, he does so "for the use and operation by the State of New Jersey in the public interest * * * and during the continuance of such possession, the relationship between the Government of the State of New Jersey and the persons employed at such public utility, except those who elect to quit such employment, shall be that of employer and employee; and during the continuance of such possession it shall be unlawful for any person employed at such plant or facility to participate in or aid in any strike * * * as a means of enforcing demands of employees against the State * * *."

The next contention is that the statute is unconstitutional because in delegating legislative power to an administrative agency it fixes standards which are so vague, indefinite, unlimited and unintelligible that the standards are not adequate. The statute (*L.* 1946, *c.* 38, as amended and supplemented by *L.* 1947, *c.* 47 and *L.* 1947, *c.* 75) before the court in the *Van Riper case* furnished no guide to the Board of Arbitration other than that it shall arbitrate "any and all disputes then existing between the public utility and the employees." In holding the statute unconstitutional because of the lack of adequate standards to guide the administrative agency in the exercise of the powers delegated to it, our Supreme Court quoted with approval the language in *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504 (*E. & A.* 1935):

"The legislature indubitably has power to vest a large measure of discretionary authority in the agency charged with the administration of a law, enacted in pursuance of the police power, to secure

the health and safety of the people. This authority is one of common exercise; it invokes the principle that sustains rate making laws, and the authority vested in examining and control boards created to regulate the professions, trades, businesses, and other callings, deemed by the law-making body to be the proper subjects of governmental supervision. It is only necessary that the statute establish a sufficient basic standard—a definite and certain policy and rule of action for the guidance of the agency created to administer the law."

The court also called attention to the fact that the constitutional objection to the lack of definite standards in delegating legislative authority had been anticipated in similar legislation in other states, citing the laws of Pennsylvania, Nebraska, Wisconsin, Florida and Indiana.

Following the decision in the *Van Riper case*, the 1946 Act was supplemented by *L. 1949, c. 308*, which, in pertinent part, provides:

"1. * * *

"(b) Where there is no contract between the parties, or where there is a contract but the parties are negotiating a new contract or amendments to the existing contract, and issues arise which are the subject of dispute between the parties in such negotiations, the board shall make a just and reasonable determination of the dispute, and in determining such issues, base its findings of fact, decision and order upon the following factors:

"(1) The interests and welfare of the public.

"(2) Comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceedings, and the wages, hours and conditions of employment of employees doing the same, similar or comparable work or work requiring the same, similar or comparable skills and expenditure of energy and effort, giving consideration to such factors as are peculiar to the industry involved.

"(3) Comparison of wages, hours and conditions of employment as reflected in industries in general and in public utilities in particular throughout the nation and in the State of New Jersey.

"(4) The security and tenure of employment with due regard for the effect of technological changes thereon as well as the effect of any unique skills and attributes developed in the industry.

"(5) Such other factors not confined to the foregoing which are normally or traditionally taken into consideration in the deter-

mination of wages, hours and conditions of employment through voluntary collective bargaining, arbitration or otherwise between the parties or in the industry.

"\* \* \*"

The standards so enacted are definite and adequate (*cf. Lichter v. U. S.,* 334 *U. S.* 742, 92 *L. Ed.* 1694 (1948); *Como Farms, Inc., v. Foran,* 6 *N. J. Super.* 306 (1950)), and they meet the test of the *Van Riper case* in that they establish a definite and certain policy and rule of action for the guidance of the agency created to administer the law. We disagree with the Company's argument that "our Legislature adopted none of the specific and definite standards contained in the statutes of other states." The standards contained in our Act are substantially the same as the standards contained in the Wisconsin Act (*Wisconsin Laws* 1947, *c.* 414, § 111.57). When the Wisconsin standards were attacked in *United Gas, C. & C. Wkrs. v. Wisconsin Employ. Rel. Bd.,* 255 *Wis.* 154, 38 *N. W.* 2d 692 (1949), the Wisconsin Supreme Court held that they were sufficient standards within the law for the guidance of arbitrators.

It is further urged that the statute is unconstitutional because the standards are arbitrary and oppressive and not susceptible to reasonably uniform application. The arbitrary and oppressive features are said to be (1) "neither standards 2 nor 3 confine the inquiry geographically," (2) "standard 3 authorizes comparisons without· the limitations contained in standard 2 regarding similarity of work and skills" and (3) "standard 5 as interpreted by the Union and applied by the Board is particularly unreasonable and oppressive." We know of no rule or reason why the Board, in the comparison of wages, hours and conditions of employment of the employees involved in the arbitration proceedings and the wages, hours and conditions of employment of others, must be limited to a particular geographical area or to a limited class of work or skill, and no authority for the necessity of any such limitation has been cited to us. Since the attack on standard 5 is not made on the content of the stand-

ard but on the application thereof, it does not constitute any attack on the constitutionality of the standard itself. We have already decided that the standards are adequate. When the standards are adequate, any attack upon the application of the standards to a given factual situation, as resulting in arbitrary and oppressive action, is not an attack on the constitutionality of the standard itself, but rather an attack on the award of the Board made thereunder.

The constitutionality of the statute is also challenged on the ground that, by authorizing the Board to direct that any award made by it shall be retroactive, it authorizes the taking of property without due process of law. The Board's order in this case, filed April 20, 1950, provided that the wage increases should be effective as of April 16, 1950. The Company argues that "although the period of retroactivity is fairly short, nevertheless an issue as to the validity of the provision of the statute for retroactivity is squarely raised." The statute (as amended L. 1947, c. 75, § 7) authorizes the Board, in its discretion, to make any award retroactive (1) to the day of taking of possession, or (2) to the day of the return to work by the employees, or (3) to the day of the termination of any contract by the public utility and its employees. The contract expired on May 10, 1949, and the Governor took possession on March 1, 1950, but the employees continued to work throughout. The Board, therefore, had power to make its award retroactive to May 10, 1949, or to March 1, 1950, but had no power under the statute to make it retroactive to any other day. The Board's order of April 20, 1950, to the extent that it made the wage increases retroactive to April 16, 1950, was in excess of its power and must be modified so as to exscind this retroactive feature. The Board did not exercise or attempt to exercise its power to make its award retroactive to any one of the days permitted by the statute, and therefore the validity of the statutory provision for retroactivity is not involved in this case.

## II.

The Company contends that the award of the Board should be set aside (1) because the Board made and filed its order without having first found the facts and decided the issues, (2) because the Board failed to make and file its findings of fact and decision before its jurisdiction ended by reason of the filing of the order, and (3) because the Board failed to extend the time fixed by statute within which the findings of fact and decision are required to be filed.

The statute (*L.* 1949, *c.* 308, § 1.) makes it the duty of the Board "to make written findings of fact and to promulgate a written decision and order upon the issue or issues presented in each case and on the basis of the evidence in the record" and provides, further: "The findings of fact, decision and order of the board shall be made within thirty days after submission of the issues in dispute or within such additional period as may be agreed upon by a majority of the members of such board. The findings of fact, decision and order of such board shall forthwith be filed by such board with the Governor. * * *" The statute contemplates that the Board shall decide these controversies by the logical process of determination; to wit, first the findings of fact, then the deciding of the issues, and finally the ordering of the result. *Cf. Saginaw Broadcasting Co. v. Federal C. Com'n.*, 96 *F.* 2d 554 (*U. S. Ct. of Appeal, Dist. Col.*, 1938). It further contemplates that the findings of fact, decision and order of the Board shall be reduced to writing and be filed simultaneously.

The order of the Board, filed on April 20, 1950, was signed by all five members, and although the Company member and the Union member each indicated therein the items on which he dissented, there was no suggestion that the Board had not first found the facts and decided the issues before making its order. That the Board did first find the facts and decide the issues before making its order is further indicated by the statement of the three public members and the Union mem-

ber in the written findings of fact and decision filed May 25, 1950, that "by an agreement of a majority of the Board the time for filing said findings of fact and decision were postponed until the date hereof."

 Our statute requires that the findings of fact, decision and order of the Board shall forthwith be filed. When the Board determined on April 18th that it would need further time to reduce its findings of fact and decision to writing, it should have withheld the filing of its order until such time as the written findings of fact, decision and order could be filed together, as required by our statute. But the failure of the Board to comply with this statutory requirement does not vitiate the award, because this requirement is directory and not mandatory. Where a statute directs a person, in the discharge of a public duty, to do a thing at a certain time, without any negative words restraining him from doing it afterwards, or any expression from which such intent can be gathered, the naming of the time is but directory, and not a limitation of authority. While, therefore, the duty enjoined may be performed at a time subsequent to that named in the statute, and the action be valid, because the time is not of the essence of the act required to be done, and is not a condition precedent to its validity, yet the statute should be obeyed, and the duty performed at the time specified. *In re Norrell,* 139 *N. J. Eq.* 550 (*E. & A.* 1947); 3 *Sutherland, Statutory Construction,* § 5816 (*3rd Ed.* 1943). In the statute now under consideration there are no negative words restraining the Board from filing its findings of fact and decision afterwards, nor any expression from which such intent can be gathered. Moreover, the failure of the Board to file its findings of fact and decision simultaneously with its order was harmless error because the Company suffered no damage therefrom. *Cf. Missouri Broadcasting Corp. v. Federal C. Commission,* 94 *F.* 2d 623 (*U. S. Ct. of App., Dist. Col.* (1937); *cert.* denied, 303 *U. S.* 655, 82 *L. Ed.* 1115 (1938)).

## III.

■ The Company attacks so much of the Board's order as awards a wage increase, a limited form of union security, and a partial reclassification of cities, on the grounds that these awards are unjust, unreasonable and not supported by the evidence and are the result of compromise and the failure to decide the issues upon an objective consideration of the evidence. All the arguments advanced to support this attack boil down to this—that the awards are contrary to the weight of the evidence. In the review of a determination such as this, the court will not substitute its judgment for the Board's, but will confine its inquiry to an ascertainment of whether the evidence before the Board furnished a reasonable basis for its determination, and if it did, the Board's action will be sustained. *Cf. New Jersey Power & Light Co. v. Borough of Butler,* 4 *N. J. Super.* 270 (*App. Div.* 1949). From our examination of the record we conclude that there was substantial evidence to support these awards; therefore, we will not disturb them.

■ The wage increase award is also attacked on the ground that wage trends were considered by the Board in arriving at this award. The Board, in its "Findings of Fact and Decision," stated: "Under Standard 5 we are satisfied that such matters as wage trends, patterns, rounds of increases, and similar advancements have been normally and traditionally taken into consideration in collective bargaining and in arbitrations" and concluded that the Board was entitled to consider wage movements in other industries for the period since May, 1948, the date of the last contract between the Company and the Union. We agree with the Board that such wage movements may properly be considered as a factor under standard 5.

A further attack upon the wage increase award is made on the ground that the Board "completely ignored and gave absolutely no weight to the standards which were more pertinent, more specific, and, from the standpoint of the public

interest and a just and reasonable determination of the dispute, the most important." The Company sums up its argument under this head as follows: "All of this adds up to the fact that there is no evidence under any of the standards which supports the Board's wage award and that the Board's order is not, as required by the statute, a just and reasonable determination of the wage issue based upon the factors specified in the statute." This attack has been answered by our conclusion set forth above that there was substantial evidence to support these awards.

The order under appeal is modified so as to exscind any wage increase prior to April 20, 1950, and as so modified is affirmed.