STATE EX REL. THOMSON, Attorney General, Petitioner, vs. GIESSEL, Director of Department of Budget and Accounts, Respondent. [Turnpike Case.]

*October 9—November 3, 1953.*

For the petitioner there was a brief by the *Attorney General* and *Warren H. Resh* and *Richard E. Barrett,* assistant attorneys general, and oral argument by *Mr. Resh* and *Mr. Barrett.*

For the respondent there was a brief and oral argument by *Ralph M. Hoyt* of Milwaukee, special counsel.

MARTIN, J.   By the enactment of ch. 186, Laws of 1953, the legislature created sec. 15.96, Stats., which provides in part:

"15.96   *Turnpike commission.*   (1) There is hereby created a Wisconsin turnpike commission of five members to be appointed by the governor by and with the advice and consent of the senate for terms of three years each; all vacancies shall be filled as provided in sec. 17.20 (2) (b).

"(2) The commission shall have the following powers and duties:

"(a) To ascertain the feasibility of the construction of a modern express turnpike or toll highway for the purpose of facilitating vehicular traffic in the state.  The route of such proposed highway to run roughly between St. Croix or Pierce

counties near the Minnesota border and Rock, Walworth, or Kenosha counties near the Illinois border.

"(b) The commission shall assemble all information it may deem appropriate relative to planning, surveying routes, cost of land acquisition, means of financing, economic practicability, potential revenues, and any other information related in any way to its functions under par. (a). If after study of this material, it is determined by a majority of the commissioners that the construction of a turnpike or toll highway over the general route set forth in par. (a) or any portion thereof is in the interests of the public and social welfare and the traveling public of the state, the individual members of the commission may by and with the consent of the governor incorporate under the provisions of the turnpike-corporation laws of this state and proceed with the construction of such turnpike or toll highway without further action of the legislature."

The first question to be determined is whether or not these provisions unconstitutionally delegate legislative powers to the Wisconsin turnpike commission.

In *State ex rel. Wisconsin Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 505, 220 N. W. 929, the rule was well expressed as follows:

"The power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate,—is a power which is vested by our constitutions in the legislature and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose, . . ." See also *Olson v. State Conservation Comm.* (1940), 235 Wis. 473, 293 N. W. 262; *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 21 N. W. (2d) 5; *United G., C. & C. Workers v. Wisconsin E. R. Board* (1949), 255 Wis. 154, 38 N. W. (2d) 692.

In ch. 186, Laws of 1953, the legislature has declared "that the construction of modern toll roads in this state is in the promotion of public and social welfare and for the benefit of public travel" (sec. 182.36 (1)); it has declared that there shall be a toll-road law; it has determined the general purpose of that law to be the "facilitating of vehicular traffic in the state" (sec. 15.96 (2) (a)); it has fixed the termini of the proposed highway which is the subject of the commission's study (sec. 15.96 (2) (a)).

We see no merit in respondent's argument that the commission's authority goes beyond fact finding into the field of legislative policy making. As pointed out above, the legislature has declared the policy. The commission's only authority is to determine the feasibility of the particular route with respect to that policy.

The power delegated by the legislature to the commission within the framework outlined in sec. 15.96, Stats., is to assemble all information relative to planning, surveying routes, costs of land acquisition, means of financing, economic practicability, potential revenues, etc., with respect to a toll road between the specified termini, and from that information make its determination of feasibility.

It was said in *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 162, 277 N. W. 278, 280 N. W. 698:

"The state can have a private instrumentality construct a highway at public expense when the location, dimensions, and similar essential matters in relation thereto have been determined by or are under the control or supervision of an official vested with its governmental powers in that regard. But the state cannot delegate the determination of such essential matters to an unofficial, private instrumentality with but the direction that it shall use appropriated state funds for the purpose of locating and constructing public highways of some kind, somewhere within the state."

What ch. 186, Laws of 1953, accomplishes is exactly that which received the approval of this court in the *Wisconsin Development Authority Case* (on rehearing) where the court adopted the language of *Clendaniel v. Conrad* (1912), 26 Del. 549, 596, 83 Atl. 1036, 1051, as follows (p. 173):

"We are unable to see that the state is parting with a part of its sovereignty by providing that a private corporation may construct a highway and give it to the state, when it is done by authority of the state, without expense to the state. If the state may, in the exercise of its sovereign power, provide safe and convenient ways for the public necessity and convenience, why is it not possible for it to secure such ways through the instrumentality of a corporation which is willing to construct and convey them to the state? Instead of parting with its sovereignty by so doing, it seems to us to be in the active exercise thereof."

In the above case the Delaware court also said (p. 594):

"The boulevard corporation cannot construct its boulevard, after its organization, but by the permission of the state authorities. The commission created by the statute have the absolute discretion to determine the feasibility and desirability of the route between any stated termini. No work can be done until plans are filed with the secretary of state, and no plans can be filed until they are approved by the state commission. Such provisions in the law sufficiently protect the state, because they enable it to determine, through its official representatives the feasibility and desirability of the proposed route as well as the character and quality of the road."

The question of improper delegation of legislative power has been raised in a number of the states which have enacted toll-road legislation, and in no instance has any such statute been declared invalid for this reason.

In *People ex rel. Curren v. Schommer* (1945), 392 Ill. 17, 63 N. E. (2d) 744, 748, 167 A. L. R. 1347, 1352, the Illinois Superhighway Act was under consideration. This act created

the Illinois state superhighway commission and defined its powers and duties. This commission was to be appointed by the governor and was given the power to set up a system of toll roads to be planned, built, operated, and maintained by the commission. The commission was given power to issue bonds payable solely out of tolls and revenues. No such bond was to be an obligation of the state. Among other things it was contended that the act delegated legislative power unlawfully to the commission, and the court said (p. 24):

"It is an accepted constitutional doctrine that the general assembly may not delegate legislative functions to a commission and invest an administrative agency with arbitrary powers, but it has long been accepted that the legislature may delegate that reasonable measure of authority which is necessary to accomplish the constitutional purpose desired. We hardly see how, in this age of modern development of highway and other transportation systems, in order to serve the public's ever increasing demand for safer and more rapid transportation, it can be said that the legislature, which is the voice of the people, has no freedom of action in determining the best methods of giving to the public that service for which it is willing and able to pay. It is the best judge of what is necessary to meet the needs of the public and in what manner the service shall be directed. It is true the general assembly may not delegate its general legislative authority, but it may, however, confer upon a municipal body, which, by reason of its position, may have more knowledge on the subject or which may do things more expeditiously than the legislature, such power as is not violative of the constitution. *People ex rel. Soble v. Gill,* 358 Ill. 261, [193 N. E. 192]."

The same question was considered in *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 Pac. (2d) 795, 806, where the act of the legislature authorized the authority to construct and build toll roads, fix and collect tolls, issue and sell bonds, and to retire the bonds from tolls collected. The court there said (p. 344):

"In short, this act delegates all power necessary to the accomplishment of the purposes of the act, but beyond that it does not delegate to anyone any of the powers of the state. . . . The provisions of this act delegating the power to function and perform under the act does not constitute delegation of any power in violation of the constitution."

See also *Elizabeth v. New Jersey Turnpike Authority* (1950), 7 N. J. Super. 540, 72 Atl. (2d) 399; *State ex rel. Kauer v. Defenbacher* (1950), 153 Ohio St. 268, 91 N. E. (2d) 512; *Ennis v. State Highway Comm.* (Ind. 1952), 108 N. E. (2d) 687.

Respondent argues that the turnpike corporation formed under secs. 182.30 to 182.48 of ch. 186, Laws of 1953, will be an agency or instrumentality of the state, and cites *Commissioner of Internal Revenue v. Shamberg's Estate* (2d Cir. 1944), 144 Fed. (2d) 998, 1000, certiorari denied in 323 U. S. 792, 65 Sup. Ct. 433, 89 L. Ed. 631, which held the Port of New York Authority to be a political subdivision of the state within the meaning of the Federal Income Tax Law.

The distinction, however, between the New York Port Authority and a corporation formed under ch. 186, Laws of 1953, is readily apparent. As was stated in that case (144 Fed. (2d) 1000):

"The Authority is a body politic and corporate created by a compact made between the states of New York, Laws N. Y. 1921, c. 154, and New Jersey on April 30, 1921, N. J. S. A. 32: 1-1 *et seq.,* and approved by congress on August 23, 1921, 42 Stat. 174."

Pursuant to such compact the states agreed to make annual appropriations, not to exceed $100,000 for each state, for expenses of the Authority until revenues from its operations were sufficient to meet its expenses. It must be noted that a turnpike corporation organized under ch. 186, Laws of 1953, is not made a body politic nor does the state appropriate or

agree to appropriate any funds whatever to such a corporation.

Respondent bases his argument, first, on the fact that ch. 186, Laws of 1953, contemplates the organization of a turnpike corporation by state officers—the members of the turnpike commission, not in their private capacities but as representatives of the state. It is conceded, however, that the language of sec. 182.32 is entirely general in its grant of the right to organize:

"182.32 *General powers.* Turnpike corporations may be organized under this chapter and shall have the powers enumerated in secs. 182.011 (1) and 182.201 except as otherwise provided in this act."

Also, the provisions of sec. 15.96 (2) (b), Stats., that "the individual members of the commission *may* by and with the consent of the governor incorporate under the provisions of the turnpike-corporation laws of this state," do not preclude the possibility that such corporation may be formed by individuals other than the five persons who were members of the commission. In any event, after the commissioners have made their finding of feasibility they have completed the work for which the commission was created and their acts in forming the corporation are the acts of private individuals.

Other provisions in the act are pointed to by respondent: Sec. 182.33 (1), Stats., that no turnpike corporation can build a turnpike except upon a route agreed to by the state highway commission with the consent of the governor; sec. 182.48, that when all the bonds of the corporation have been retired from revenues, the toll road shall become a part of the free highway system of the state. These facts do not make a turnpike corporation a state agency. The legislature has declared that the purpose to be served by the construction of the toll road is a public purpose. It is only proper that its construction be subject to the approval of the state

highway commission and the governor. Neither does the fact that the corporation will be holding its property in trust for the state make it a state agency or instrumentality.

We cannot see that a turnpike corporation formed under ch. 186, Laws of 1953, is any different, so far as being a state agency is concerned, than the Wisconsin Development Authority considered in the *Wisconsin Development Authority Case, supra,* where it was pointed out on rehearing that although the statute designated such corporation as the state's instrumentality for the execution of certain duties and functions, the corporation nevertheless was empowered by its articles to do everything that it could do after the enactment of the statute. Thus, the statute making it the state's instrumentality conferred no power upon it. Here the same principle applies in that the turnpike corporation when formed derives its powers from the general provisions of the act, secs. 182.30 to 182.48, and the mere fact that the end result will be the construction of certain highways to which the state will eventually have title does not result in making the private corporation a state agency or instrumentality.

There are numerous examples of private corporations with a public purpose—the State Historical Society, the State Horticultural Society, the Wisconsin Horse Breeders' Association, the Wisconsin Agricultural Society, the Wisconsin Livestock Breeders' Association, and others.

As stated in *State ex rel. La Crosse Public Library v. Bentley* (1916), 163 Wis. 632, 158 N. W. 306, in determining whether a particular agency may be employed by the state by legislative authorization to perform any particular work, the test is not whether the agency is public, but whether the purpose is public within the legitimate functions of our constitutional government.

Under sec. 15.96 (1) of ch. 186, Laws of 1953, the turnpike commission has a life of only three years. If at the end of that time the commissioners have formed a turnpike cor-

poration, such corporation must function as a private corporation.

Respondent contends, if it is held that a turnpike corporation is a private corporation, that ch. 186, Laws of 1953, violates sec. 31, art. IV of the constitution prohibiting the legislature from enacting any special or private laws, "For granting corporate powers or privileges, except to cities." This contention seems to be based on the fact that the commission is empowered to study the feasibility of a turnpike on but the one specified route. From this respondent reasons that the legislature contemplated the creation of only one corporation. It will be noted, however, that under sec. 15.96 (2) (c), the legislature empowers the commission to "undertake similar studies of such other turnpike or toll-road projects as the legislature may direct."

In *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 Pac. (2d) 795, where the court considered this same argument, it was held that even though the act in question authorized a toll road only as between two specific cities, it did not preclude the possibility that other turnpikes may be constructed under the same general provisions of the act authorizing the initial toll road.

Respondent points to cases involving legislative classification of cities where this court has held that the creation of a closed class to which only a single city can belong violates the constitutional provision referred to, *Burnham v. Milwaukee* (1897), 98 Wis. 128, 73 N. W. 1018; *Federal Paving Corp. v. Prudisch* (1940), 235 Wis. 527, 293 N. W. 156, and argues that the same principle applies to the parallel provision of the constitution with respect to corporations. The analogy may be conceded, but, as was pointed out in *Lamasco Realty Co. v. Milwaukee* (1943), 242 Wis. 357, 376, 8 N. W. (2d) 372, 8 N. W. (2d) 865, " 'the fact that at the time of a particular enactment applicable thereto there is only one member thereof does not militate against

the validity of the legislation.'" (Citing *Adams v. Beloit* (1900), 105 Wis. 363, 81 N. W. 869.) We have the same situation here. It may well be that the need will arise for other toll roads in the state, and at such time other corporations may be organized under the corporate law embodied in ch. 186, Laws of 1953. Such a situation is clearly anticipated by the legislature in sec. 15.96 (2) (c).

The phraseology employed in ch. 186, Laws of 1953, itself indicates that the organization of more than one corporation is contemplated. In sec. 182.31 (1) it is stated that "corporation" or "turnpike corporation" shall mean "any corporation organized under this chapter not for profit and without stock for the purposes and with the powers set forth hereunder." In other sections of the act the word *corporations* is used, in the plural form. See secs. 182.35 (1), 182.41, 182.42. *State ex rel. Church Mut. Ins. Co. v. Cheek* (1890), 77 Wis. 284, 46 N. W. 163, relied upon by respondent, is not applicable since the language of the act under consideration in that case indicated that it authorized but a single corporation.

It is apparent that ch. 186, Laws of 1953, provides the machinery for the establishment of any number of turnpike corporations as the needs may arise, and it is therefore not violative of the prohibition contained in sec. 31, art. IV of the constitution.

Even if turnpike corporations are deemed private corporations, respondent argues that ch. 186, Laws of 1953, violates sec. 3, art. VIII of the constitution: "The credit of the state shall never be given, or loaned, in aid of any individual, association, or corporation." We do not find anywhere in ch. 186 either a direct or indirect attempt to aid any individual, association, or corporation. The act appropriates $250,000 to the turnpike commission for the purposes of carrying out its duties and functions. Sec. 20.497. The commission, however, is an agency of the state. If a corporation

is subsequently formed for the purpose of constructing and operating a toll road, it cannot in any way draw upon the funds appropriated to the commission by sec. 20.497.

Sec. 3, art. VIII of the constitution was considered in the *Wisconsin Development Authority Case, supra,* and the court said (p. 197):

"It is our conclusion that the giving or loaning of the credit of the state which it was intended to prohibit by sec. 3, art. VIII, Wis. Const., occurs only when such giving or loaning results in the creation by the state of a legally enforceable obligation on its part to pay to one party an obligation incurred or to be incurred in favor of that party by another party. There is no such giving or loaning of the state's credit within the meaning of that prohibitory provision when all that is done by the state is to incur liability directly or only to such other party as, for example, where the state lawfully employs someone to perform an authorized service for the state."

Respondent argues that the bond-buying public will feel that the state is giving its credit to the turnpike-corporation bonds even though there is no legal obligation on the part of the state, because it will be reasoned that the state could not afford to allow the project to fail. Obviously, this cannot be the test to be applied. The test of a "legally enforceable obligation" laid down in the *Wisconsin Development Authority Case, supra,* is the only sound one.

It is expressly provided in sec. 182.34 (5) and (6) of ch. 186, Laws of 1953:

"(5) Turnpike-revenue bonds and refunding bonds issued under the provisions of this act shall be payable solely from the funds pledged for their payment as herein authorized and shall not constitute a debt of the state or of any political subdivision of the state.

"(6) All expenses incurred by a turnpike corporation shall be payable solely from funds provided under the authority of this act and nothing contained in this act shall be construed

to authorize a turnpike corporation to incur indebtedness or liability on behalf of or payable by the state or any political subdivision of the state."

This in itself should be a sufficient answer to respondent's argument.

It is conceded by respondent that ch. 186, Laws of 1953, constitutionally confers upon a turnpike corporation the power of eminent domain. See 2 Nichols, Eminent Domain (3d ed.), p. 490, sec. 7.512 (3). He contends, however, that the summary method of taking provided by sec. 182.35 (2) violates the state and federal constitutional guaranties of due process. That section provides:

"If the lands or interests therein cannot be purchased expeditiously for a reasonable price, the corporation may acquire the same by condemnation either by the existing power under ch. 32 or in the following manner. The corporation shall by resolution make an award of damages to the owner which said award shall be in writing stating the names of the owner or owners, a description of the premises taken and the interest therein and shall be duly executed and acknowledged by two officers of the corporation; thereupon the amount of the award shall be tendered or paid to the owner or owners and said owner or owners may receive the same without prejudice to his right to claim and to contest for a greater sum, except that no interest upon the original amount of the award paid or tendered shall be recoverable or allowed in any subsequent appeal. A copy of the award of damages shall be delivered or mailed to the owner or owners if the address is known and if not known, then to the occupant of the land. If the land is unoccupied and the name or address of the owner or owners is unknown, the award shall be published once each week for three successive weeks in a newspaper having a general circulation in the county where the land is situated and shall state that the amount awarded is available at the office of the turnpike corporation. If such an award is not claimed within five years from the date of last publication, it shall escheat to this state and be paid forthwith to the state treasurer, subject to refund to the rightful

owner as provided by law. After tender payment or publication the award shall be recorded in the office of the register of deeds of the appropriate county, after which the turnpike authorities and their contractors and employees may take possession of the land and exercise full control of the interests in the land acquired. The former owner may within one year after the recording of the award with the register of deeds apply to the county judge to have his damages reappraised. Notice of such application for reappraisal shall be served upon the turnpike corporation within such one-year period or the appeal deemed invalid. As soon thereafter as practicable but after not less than five days' written notice, the county judge shall call the parties before him and make such inquiry and investigation as he may deem advisable. Such inquiry and investigation is not a proceeding in county court and there shall be no necessity of preserving a record of the same. Within not more than ten days thereafter, the judge shall make his appraisal in writing and notify the parties of the same. Within thirty days after notification, either party may appeal to the circuit court for an additional reappraisal under the provisions of sec. 32.11 and such other provisions of ch. 32 as are applicable to appeals in other eminent domain proceedings."

A method of condemnation (see secs. 84.09 (2) and 83.07, Stats.) which is similar to that provided by sec. 182.35 (2) has been used by the state highway commission for a number of years, and in *Highway Committee of Jefferson County v. Guist* (1940), 235 Wis. 18, 292 N. W. 226, it was stated that sec. 83.07 affords the parties due process of law. Respondent contends that the statement was obiter and that the question of its validity was not fully briefed and argued in that case. Respondent is mistaken in this; the cases and briefs show that the validity of the law was challenged on the basis of due process and the issue was argued.

It is not a fair argument to say that in permitting the turnpike corporation to use this method of condemnation, it may award an entirely inadequate amount in damages and put the owner in a position of disadvantage to prove his true

damages in court. The presumption is that any such award will be made in good faith.

In any event, whether the corporation were to employ the summary method or the method prescribed in ch. 32, Stats., the only question which the owner has the right to have determined is the amount of his damages; and the requirements of due process are satisfied so long as the owner is afforded the opportunity to have the issue tried by the courts. Sec. 182.35 (2) affords him that opportunity. See *Bolles v. Milwaukee* (1951), 259 Wis. 588, 49 N. W. (2d) 748; *Uihlein v. St. Paul* (8th Cir. 1929), 32 Fed. (2d) 748.

The legislature has simply recognized that in the construction of highways it is necessary to avoid the frustrations and delays incident to a procedure of condemnation which allows a few owners to put off the taking of the land while the question of their damages is litigated. Under the summary method prescribed in this section the work may progress while such litigation is carried on.

Respondent contends that sec. 182.35 (1), Laws of 1953, is unconstitutional in that it permits a turnpike corporation to condemn excess lands. Condemnation of excess lands is uniformly held to be unconstitutional. 18 Am. Jur., Eminent Domain, p. 736, sec. 110; Anno. 14 A. L. R. 1350; Anno. 68 A. L. R. 837.

The section referred to provides:

"Turnpike corporations may acquire by gift, devise, purchase, or condemnation any lands determined by them to be necessary for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving, and maintaining its project including lands which may be necessary for toll houses and appropriate concessions and for any other purpose authorized by this act. Title may be acquired in fee simple and any other interest in lands may be acquired as may be deemed expedient or necessary by the corporation. Any lands determined to be unneeded by the corporation may be sold by the corporation at public or private sale with

or without restrictions or reservations concerning the future use and occupation of such lands so as to protect the project and improvements and their environs and to preserve the view, appearance, light, air, and usefulness of the project."

In *Bond v. Mayor and City Council of Baltimore* (1911), 116 Md. 683, 82 Atl. 978, 981, the statute challenged empowered a city for the purposes of highway improvement to condemn land in the bed of a highway and adjacent land on either or both sides, and further provided that any land or other property acquired under the provisions of the act excepting land lying in the bed of the highway could be sold after the highway had been laid out and completed. The court said (pp. 688, 689, 690):

". . . the act does not authorize the condemnation of private property by the city for any purpose other than a public use. . . .

"The use of the expression 'to acquire for said purposes' in the act plainly limits and designates the purpose for which property may be taken by the city, . . .

". . . this being so, there can be no possible or serious dispute that the use for which property may be acquired and can be taken . . . is for a public use, . . .

"It cannot be assumed in this case that the city will undertake to condemn or take property for purposes other than those authorized by the act. *The presumption is that the city will act within its rights and not beyond them.*" (Emphasis ours.)

The power to sell lands taken when it is determined that they are no longer needed for public use "is latent in every taking, and is very different from a taking of land with a contemporaneous knowledge and purpose that a definite and separable part is not necessary for the public use." 2 Nichols, Eminent Domain (3d ed.), p. 453, sec. 7.223. See also *Sanitary Dist. of Chicago v. Manasse* (1942), 380 Ill. 27, 42 N. E. (2d) 543; *Driscoll v. New Haven* (1902), 75 Conn.

92, 52 Atl. 618; *Matter of Rochester* (1893), 137 N. Y. 243, 33 N. E. 320.

Sec. 182.35 (1), Stats., permits the corporation to condemn only such lands as are "necessary." In its determination of what lands are necessary, it is presumed the corporation will act in good faith. Contingencies may well arise, however, in the "constructing, reconstructing, improving, and maintaining" the project to make certain lands acquired by the corporation (including those acquired by purchase and gift, as well as by condemnation) unnecessary; and in providing that such lands may be disposed of by the corporation the act cannot be construed as allowing the taking of property for private purposes.

Sec. 182.46 of ch. 186, Laws of 1953, provides:

*"Tax exemptions.* The exercise of the powers granted by this act will be in all respects for the benefit of the people of this state, for the increase of their commerce and prosperity and for the improvement of their health and living conditions, therefore the corporation shall not be required to pay any taxes or assessments upon any turnpike project or any property acquired or used by the corporation under the provisions of this act or upon the income therefrom, and the bonds issued under the provisions of this act, their transfer, and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the state."

Sec. 182.33 in such chapter provides, in part:

*"Additional powers.* Such corporation shall have the following additional powers:

"(5) To lease suitable parcels of land for or to construct and lease to private persons, after competitive bidding, gasoline stations, garages, stores, hotels, motels, restaurants, tourist rooming houses, and such other facilities as the corporation may deem to be necessary or desirable. The corporation shall have full power to determine the number and location of such facilities."

Respondent concedes that the tax exemption provision of sec. 182.46, Stats., is not in itself unconstitutional, but contends that such exemption, when combined with the provisions of sec. 182.33 (5), amounts to unreasonable classification and is a denial of equal protection of the laws guaranteed by sec. 1, art. I of the Wisconsin constitution and sec. 1 of the Fourteenth amendment of the federal constitution.

Sec. 1, art. VIII of our constitution provides:

"The rule of taxation shall be uniform but the legislature may empower cities, villages, or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges, and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

It has long been held that under these provisions the legislature has the "amplest power . . . to exempt an entire class of property from taxation, and to make such class very narrow, even excluding from the benefits accorded to the members thereof those owning property of the same general class, so long as the character of that owned by those of the subclass is so far different from that owned by others, as, within the boundaries of reason at least, to suggest necessity or propriety, having regard to the public good and the constitutional object to be attained, and limitations in respect thereto, of substantially different legislative treatment." (Citing *Wisconsin Central R. Co. v. Taylor County* (1881), 52 Wis. 37, 8 N. W. 833). *Lawrence University v. Outagamie County* (1912), 150 Wis. 244, 248, 136 N. W. 619.

Under this rule the legislature has not exceeded its authority in giving the tax exemption of sec. 182.46, Stats., to toll-road corporations. So far as the powers conferred on such

corporation by sec. 182.33 (5) are concerned, we must assume that they will be exercised in good faith and only such concessions leased as are "necessary or desirable" in accomplishing the public purpose expressed by the legislature in ch. 186, Laws of 1953. For a discussion of what facilities may be considered necessary and desirable in connection with the operation of a modern toll road, see *Opinion of the Justices* (Mass. May 22, 1953), 113 N. E. (2d) 452.

Several arguments have been advanced by respondent on the premise that a turnpike corporation will be a state agency or instrumentality. Since we hold that such a corporation will be a private corporation, it is unnecessary to do more than mention them. Even if we should concede that the construction of toll roads is a work of internal improvement and not exempted by the 1908 amendment to sec. 10, art. VIII of the constitution concerning "public highways," the prohibition of that section of the constitution is not violated, since it applies only to such works as may be engaged in by the state. Sec. 2, art. VIII, is likewise inapplicable to the situation here, since no money will be paid out of the state treasury for the construction and operation of a toll road. Nor is sec. 6, art. VIII, involved, since a private corporation cannot contract debts enforceable against the state. See cases cited *supra*.

We deem it only fitting to mention that the court was greatly assisted by the exhaustive briefs filed and the well-considered oral arguments presented by counsel in this matter.

We hold that ch. 186, Laws of 1953, is valid in its entirety. Petitioner is entitled to a peremptory writ of mandamus commanding the respondent to audit, honor, and approve the allotment request of the Wisconsin turnpike commission for the release of $155 for capital outlay for the quarter ending September 30, 1953, and to audit, honor, and approve the requisition or purchase order of said commission for the

purchase of a $155 typewriter, and any and all future requisitions made under authority of the act creating the commission.

*By the Court.*—The petition for a peremptory writ of mandamus is granted; and a declaratory judgment granted adjudging that ch. 186, Laws of 1953, is a valid enactment.