53 N.J. Super. 590 (1959)
148 A.2d 58
LOTTIE KRYSCNSKI AND WILLIAM KRYSCNSKI, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
STANLEY SHENKIN, BUILDING INSPECTOR OF THE TOWNSHIP OF WASHINGTON, A MUNICIPAL CORPORATION, AND THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WASHINGTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1959.
Decided January 29, 1959.
*592 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Lloyd L. Schroeder argued the cause for appellants.
Mr. Marvin Kosoff argued the cause for respondents.
*593 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from a summary judgment entered by the Superior Court, Law Division, on plaintiffs' motion, ordering the Board of Adjustment of Washington Township to grant plaintiffs or their assigns a variance permitting them to erect a one-family dwelling on their property.
Plaintiffs are the owners of a 50' x 100' lot on Colonial Boulevard, Washington Township, located in the Class B residential district established by the township zoning ordinance of 1941, as amended. They acquired the lot in 1931, long before the adoption of the zoning ordinance in 1941, which required a minimum frontage of 50' for any building lot located in the district in question. The ordinance was subsequently amended in May 1952, to change this minimum frontage requirement to 75'. Plaintiffs have never owned any property adjacent or contiguous to their lot. Adjoining their property on the north is the Sanzone home, built on a 50' frontage, and immediately to the south is the Enger home, built on a 75' lot.
Plaintiffs entered into a contract to sell their property for residential use, the sale being contingent on their first obtaining a variance. Accordingly, on April 3, 1958 they applied to defendant township building inspector for permission to erect a one-family dwelling on their 50' lot. The application was denied, and on the same day they applied to the local board of adjustment for a variance to permit the requested use.
The board held a public hearing on May 20, 1958. Evidence was taken indicating that plaintiffs had agreed to sell their property, subject to the granting of a variance. Both their present attorney, Mr. Kosoff, and the real estate broker, Mr. Werner, refused to produce the agreement. The broker, whose qualifications as an expert were not questioned, testified that in his opinion a substantial one-family house, conforming with other houses in the area, could be erected on the lot in question; that such a dwelling would not result in substantial detriment to the public good or impair *594 the intent and purpose of the zone plan and zoning ordinance; and it would not depreciate values in the area. He said that unless a variance were granted there was no other use to which the owners could put the land, except for a garden. He also testified that the property had been offered to the adjoining owners at a figure of $2,500. The Sanzones said they would not be interested in paying even $500, and the Engers said they had no money to purchase the lot. It was also brought out that the board of adjustment had granted a variance for a 50' corner lot nearby.
Neighboring property owners voiced objection to the granting of the variance because of alleged sewage and drainage problems and their general unhappiness over a house being constructed on plaintiffs' lot. As to this, we might observe that (1) if there were any sewage and drainage problems, they presumably would have to be solved in accordance with the building code before any building permit would issue, so that the objections on this ground would seem irrelevant; and (2) the lot in its present condition is unattractive, so that a house would certainly enhance the appearance of the neighborhood.
At the close of the hearing counsel for the township requested that the matter be continued to the next regular meeting of the board on June 17, 1958, to afford him an opportunity to produce and examine witnesses and to subpoena the contract of sale. The hearing was again continued to July 15, 1958 because the subpoena had not been served, and on that date the matter was further adjourned to August 19, 1958 for lack of a quorum. Meanwhile, plaintiffs had instituted a proceeding in lieu of prerogative writs by complaint filed July 11, 1958, pursuant to N.J.S.A. 40:55-45.
At the continued hearing on August 19, 1958 counsel for plaintiffs objected to the right of the board of adjustment to sit since the matter had been removed to the Law Division, thereby stripping it of jurisdiction to consider or act upon the variance application. Despite this protest, the board proceeded with the hearing. Plaintiffs' attorney refused to *595 be sworn or to produce the contract of sale. The board then took the testimony of a real estate expert produced by the township who said that the erection of a home on plaintiffs' plot would have a detrimental influence on the value of surrounding properties and would impair the intent and purpose of the zoning plan and zoning ordinance. His conclusion was based primarily on the view that any 50' frontage in Class B residential district is undesirable, and the fact that there are a large number of such isolated 50' lots in the township. We observe that the testimony so taken on August 19 was, of course, never presented to nor filed with the trial court. Following this hearing the matter was further adjourned to September 16, 1958. The case is still pending before the board of adjustment.
Plaintiffs' complaint of July 11, 1958 outlined their attempt to obtain a variance by appeal to the board of adjustment from the building inspector's denial of a permit, and alleged that the board's failure to act by July 3, 1958 amounted to a denial of their appeal. They demanded judgment ordering the building inspector to issue the requested permit. In their answer defendants, among other defenses, alleged that plaintiffs were not entitled to a variance; that granting the requested variance would be in violation of the zoning ordinance, would result in substantial detriment to the public good, and substantially impair the intent and purpose of the zone plan and zoning ordinance; and that the board had not yet acted but had reserved decision pending continued hearing. Plaintiffs then moved for summary judgment, submitting supporting affidavits of their own, their counsel and their real estate expert, setting out the facts already recited. Defendants submitted an affidavit recounting the hearing and adjournments, and an affidavit by the real estate expert in which he described the premises, stating that there were a large number of plots in the township with a 50' frontage and alleging, without more, that in his opinion the granting of the variance would be a substantial detriment to the public good, impair the intent and purpose of the local zone plan and ordinance, *596 and depreciate values in the neighborhood. After argument the Law Division judge granted summary judgment for plaintiffs.
Defendants' first attack on the summary judgment is that plaintiffs brought their action in lieu of prerogative writs prematurely; that they were required to wait until the conclusion of the hearings and the board's determination before resorting to the courts. We do not agree.
R.S. 40:55-45 provides:
"Whenever an appeal shall be taken to a board of adjustment pursuant to this article said board shall render its decision upon such appeal within sixty days from the date of the hearing on such appeal, and in any event within ninety days from the date of the filing of the appeal as herein provided in this article, and upon failure so to do such appeal at the expiration of such time shall be deemed to be decided adversely to the appellant in the same manner as though said board had rendered a decision to that effect."
Defendants claim that since the statute does not contain any negative words restraining the board of adjustment from rendering its decision after the expiration of 90 days from the date of the filing of an appeal, and since its provisions are not of the essence of the law concerning the powers of the board, but relate to form and manner and are incidental thereto, the suit is directory and not mandatory, citing Paramus v. Ridgewood Park Estates, 42 N.J. Super. 369, 375-376 (App. Div. 1956); Sharrock v. Keansburg, 15 N.J. Super. 11, 17 (App. Div. 1951); New Jersey Bell Telephone Co. v. Communications Workers, etc., 9 N.J. Super. 110, 122 (App. Div. 1950); In re Norrell, 139 N.J. Eq. 550, 553 (E. & A. 1947), and similar cases. These decisions have no present pertinence because the statute clearly provides that in the event there is no decision by the board within 90 days from the date of the filing of the appeal, such appeal shall be deemed to have been decided adversely to the appellant, just as if the board had rendered a formal decision.
*597 Plaintiffs were entirely justified in bringing their action in the Law Division. The distinction between directory and mandatory statutory provisions which defendants urge upon us can be relevant only where a statute specifies a time limit but does not specify the result of failure to comply therewith. It has no application in the case of a statute which expressly states the effect of non-compliance. R.S. 40:55-45 was enacted for the very purpose of preventing an applicant for a variance from being exposed to unnecessarily protracted proceedings before a zoning board of adjustment, as here.
Defendants next contend that the trial court erred in granting summary judgment because there were disputed issues of fact. R.R. 4:58-3 directs that summary judgment shall be rendered forthwith where the pleadings, depositions and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to the judgment as a matter of law. All the facts appear in the papers that were before the Law Division. The only dispute was that between the real estate experts of the parties, who disagreed on whether the variance would be a substantial detriment to the public good and substantially impair the intent and purpose of the local zone plan and zoning ordinance. This dispute merely relates to a conclusion to be drawn from the facts, and is not of itself a factual dispute. Although the trial court had before it the testimony of plaintiffs' expert at the board hearing, as well as his affidavit, setting out the basis for his opinion, it had nothing more than the conclusions of defendants' expert, without supporting reasons. The trial court was completely correct in proceeding to grant a summary judgment.
The real issue here is whether plaintiffs were entitled to the requested variance. As to this there is little or no question. A municipality cannot destroy the economic value of a lot by retroactively prohibiting the erection thereon of a single-family dwelling through the adoption of a zoning *598 ordinance amendment requiring a 75' minimum instead of a 50' minimum frontage, unless relief is available at the hands of the board of adjustment. Substantially similar situations were presented in Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957), reversing 41 N.J. Super. 582 (App. Div. 1956); Rodee v. Lee, 14 N.J. Super. 188 (Law Div. 1951); and DeMoss v. Borough of Watchung, 137 N.J.L. 503 (Sup. Ct. 1948). This is not a case of a variance sought by purchasers after they have bought a lot with full knowledge of the zoning ordinance restrictions, in which case other considerations might apply. See the Ardolino case, 24 N.J. at page 106 et seq. A variance would clearly have to be granted to plaintiffs as present owners of the property. In our opinion it should make no difference that they were making the application in order to be able to sell the lot, for they are entitled to get their economic value out of their holdings. The only way they can be sure of doing so is to obtain the variance so that they can get a price for their property commensurate with its legal utility for erection of a single-family dwelling.
Defendants argue by analogy to the law concerning non-conforming uses. They point out that the spirit of zoning statutes and regulations is to restrict rather than increase non-conforming uses, and that variances should therefore be sparingly granted. Some emphasis is placed upon the existence of numerous other 50' lots in Washington Township. Defendants claim that the denial of a variance to plaintiffs and others similarly situated would preserve the zoning plan and avoid a gradual frittering away of the zoning ordinance. The same argument was made in Burke v. Spring Lake Board of Adjustment, recently decided by this court, 52 N.J. Super. 498 (1958), where we held in somewhat similar circumstances that the denial of the requested building permit and variance was unreasonable and arbitrary.
Defendants suggest that plaintiffs should have presented competent and credible evidence to the board of adjustment at its hearings that they had made a bona fide offer to sell *599 their plot to one or the other of the adjoining owners, for the price mentioned in the sales contract which they then held, less attorneys' fees and all expenses for obtaining a variance. They argue that plaintiffs were obliged to do everything within their power to try to eliminate any exceptional and undue hardship they might claim, thereby precluding the necessity of applying for a variance  and that they failed in this duty. Defendants cite no authority for this proposition.
In the exercise of our original jurisdiction, we called upon plaintiffs to produce their sales contract, and have examined it. It shows that prior to applying for a permit they had entered into an agreement to sell their property for $1,000. The sale was expressly conditioned upon their obtaining a variance, and the purchasers bound themselves to pay all costs and attorneys' fees connected with the application for a variance and permit. The parties agreed that plaintiffs' attorney should act as agent and attorney for the purpose of making application to the township board of adjustment. The contract was to be null and void if a variance and permit were not obtained.
The fact is, as recited above, that the property was offered to the adjoining owners for $2,500, and that one had no money to buy and the other was not interested at even a $500 price. It is obvious, of course, that the purchase price would have been much more than $1,000 if it were not for the obligation undertaken by the purchaser to pay for all costs and attorneys' fees connected with obtaining a variance and permit, these items closing up the greater part of the gap between $1,000 and $2,500.
The argument of the township that it was incumbent upon plaintiffs first to see whether they could sell their lot to the neighboring owners for the same price as contained in their contract, is not a meritorious one. Such a requirement would raise any number of collateral matters, such as whether the contract was truly a bona fide one, whether the offer to the neighboring owners was bona fide, whether the offer had been held open for a reasonably long time, and *600 so on. These would have to be resolved by the board of adjustment, and undoubtedly would be productive of extensive litigation. We hold such a requirement unduly burdensome and an improper interference with plaintiffs' right of property.
The judgment of the Law Division is affirmed.