77 N.J. Super. 288 (1962)
186 A.2d 141
GUERIN J. MISCHIARA AND MARY E. MISCHIARA, PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF PISCATAWAY AND GEORGE NESLER, BUILDING INSPECTOR, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued September 21, 1962.
Decided September 21, 1962.
*290 Mr. Paul E. Feiring argued the cause for plaintiffs (Messrs. Blatz and Feiring, attorneys).
Mr. Mark L. Stanton argued the cause for defendants (Messrs. Doren and Stanton, attorneys).
HALPERN, A.J.S.C. (orally).
Plaintiffs appeal from the denial of a variance by the Board of Adjustment of Piscataway Township.
The uncontroverted facts are as follows: In 1942 plaintiffs owned and resided at 1799 West Seventh Street, Piscataway Township. This one-family house was situated on lots equalling 30 feet by 103 feet. In 1946 they purchased by assignment from the Township of Piscataway, Tax Title Certificate No. 3666 for vacant lots 82 and 83 in Block 50. These vacant lots front on Meister Street and total 40 feet by 103 feet in size, and adjoin on the rear the premises at 1799 West Seventh Street. The lots on both sides of the Meister Street lots have dwelling houses erected thereon. In 1957 plaintiffs started foreclosure proceedings on their tax title to the Meister Street property and obtained judgment and fee title thereto on February 24, 1958. They sold the premises at 1799 West Seventh Street in March 1957. No subdivision *291 was sought or obtained from the Township of Piscataway for this sale.
In 1953 the township enacted a zoning ordinance requiring all property in the R-7500 zone, which included the vacant lot on Meister Street, to have a minimum frontage of 75 feet and an overall square footage of 7500 feet. One-family houses built on such lots were required to have 25 foot front and rear setbacks, side yards of 8 feet, and an overall living area of 768 square feet.
Plaintiffs' lot on Meister Street, having a square footage of only 4120 feet (40 feet by 103 feet), did not comply with the 1953 zoning ordinance. Plaintiffs, desiring to build a one-family dwelling on such property, applied for a variance to the Board of Adjustment on hardship grounds under N.J.S.A. 40:55-39(c). The variance was denied on the ground that the erection of a house "would create a health hazard and would be detrimental to the best interests of the Township of Piscataway." At the Board of Adjustment meeting plaintiff's real estate expert witness, Mr. Charles Clark, testified that a 24-foot house could be built on the property in question which would neither depreciate the neighborhood nor impair the intent and purpose of the zoning plan. Mr. Clark stated that such a house could be built for approximately $15,000. Other houses in the area sold for prices ranging from $12,000 to $18,000. It was also mentioned at the Board of Adjustment meeting that no sewers existed in the area of the property in question, necessitating the use of septic tanks; a percolation test had been taken to determine if a septic tank could be installed, yet the meaning of the results of such test was not brought out at the meeting. It further appeared, according to the tax map, that six other nonconforming uses existed in the area on lots with less than 7500 square feet. Several neighbors objected to the application by the plaintiffs because their own applications for a variance to build on their 60-foot lots had been turned down; or that their property values would be decreased by the erection of a house on such minimum lots; or *292 that there would be a drainage problem. These objections were not substantiated by any facts in the record.
It is fundamental that a landowner seeking a variance on the ground of undue hardship, has the burden of proof to establish the existence of the statutory criteria for relief under N.J.S.A. 40:55-39(c). Tomko v. Vissers, 21 N.J. 226, 237 (1956).
It is equally well settled that the decision of the Board of Adjustment is presumptively correct. Miller v. Boonton Tp. Board of Adjustment, 67 N.J. Super. 460, 469 (App. Div. 1961); and that the spirit of the zoning act is to restrict rather than to increase nonconforming uses. Beirn v. Morris, 14 N.J. 529, 537 (1954).
This court, on appeal, must appraise the findings made by the Board of Adjustment to determine from the record alone, if there was evidence to support the statutory criteria, namely, the existence affirmatively of sufficient special reasons to grant the variance, and negatively of adequate evidence that the granting of the variance would be without substantial detriment to the public good, and would not substantially impair the intent and purpose of the zone plan and the zoning ordinance. Wajdengart v. Broadway-Thirty-Third Corp., 66 N.J. Super. 346, 352 (App. Div. 1961).
A municipality may not destroy the economic value of a lot by retroactively prohibiting the erection thereon of a single-family dwelling through the adoption of a zoning ordinance amendment enlarging existing minimum lot size requirements, unless relief is available at the hands of the Board of Adjustment. Kryscnski v. Shenkin, 53 N.J. Super. 590 (App. Div. 1959); Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957). Or, put another way, where one purchases property prior to a zoning amendment at a time when he honestly and justifiably believes he may use it for a designated purpose, the fact that he will be deprived of any practical economic use of the property unless a variance is granted, is sufficient grounds for the granting of a variance because of hardship. Burke v. Spring Lake Board *293 of Adjustment, 52 N.J. Super. 498 (App. Div. 1958). The rationale is that land should not be rendered incapable of use for any legitimate purpose.
Some decisions indicate that if one purchases land with actual or constructive knowledge of a zoning restriction, such purchaser has created his own hardship, and a variance from the zoning restriction sought on the grounds of undue hardship may be denied. Aschenbach v. Plainfield, 121 N.J.L. 598 (Sup. Ct. 1939); Lumund v. Board of Adjustment of the Borough of Rutherford, 4 N.J. 577 (1950); Home Builders Ass'n. of Northern N.J. v. Paramus, 7 N.J. 335 (1951); Leimann v. Board of Adjustment, Cranford Tp., 9 N.J. 336 (1952). Such cases usually arise where the plaintiff purchases a parcel of land in a residential area and then seeks to build a gas station, Lumund, supra; or garden apartments, Leimann, supra; or a garage to house school buses, Beirn, supra. It should be noted that none of these cases involve the situation, as in the instant matter, where a lot becomes landlocked and completely unusable as a result of a zoning ordinance increasing the minimum lot size. The philosophy expressed by the cases just mentioned has been considerably softened and will probably have little weight in a nonconforming use case. See Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, at pp. 107-108 (1957); and Beers v. Board of Adjustment of Wayne Township, 75 N.J. Super. 305 (App. Div. 1962).
There is one final point to discuss, namely, when did the plaintiffs in the instant case become the "purchasers" of the property in question? Three dates are important: in 1946 the plaintiffs purchased a tax sale certificate on the property in question; in 1953 the zoning ordinance was amended upgrading the minimum lot sizes; and in 1958 the plaintiffs obtained judgment foreclosing the property. The legal issue, then, is did the plaintiffs become the "purchasers" of the property in question in 1946 so that the amended zoning ordinance of 1953 would be retroactive as applied to them and would create for them an undue economic hardship, *294 rendering the property useless for any purpose? Or, posed another way, what is the legal significance of the 1946 purchase by the plaintiffs of the tax sale certificate?
A tax sale certificate is a conveyance of the land, yet it is not an outright conveyance. It does not operate as a final and irrevocable divestiture of the title of the owners of the land. It is a conveyance of land to the purchaser vesting in him an inchoate right or interest, subject to the statutory right of redemption by the owner. Chelsea Laundry Co. v. Toscano, 14 N.J. Super. 496, 500 (Ch. Div. 1951); City of Newark v. Ladato, 139 N.J. Eq. 471 (Ch. 1947); Clark v. Jersey City, 8 N.J. Super. 33 (App. Div. 1950); R.S. 54:5-52. Thus, the purchaser of the tax sale certificate gets an interest in the land, but not a perfected title. The owner of the property has the right of redemption, unless the purchaser bars such right by complying with the statutory requirements. R.S. 54:5-77, 54:5-78, or 54:5-85. Within the context of the instant case, I am of the opinion that plaintiffs had sufficient status, as purchasers of the tax title certificate, to be in the same legal position as if they had an outright fee to the land in question; and, therefore, the 1953 zoning amendment should not be applied retroactively to cause them undue economic hardship. Justice requires such a result, for to hold otherwise would render the parcel of land in question useless. It might be mentioned that even if the plaintiffs were deemed to have "purchased" the property in question in 1958 when they foreclosed on it, the reasoning of the Ardolino case, supra, would entitle them to the granting of a variance, even though they had knowledge of the zoning restriction when they purchased the property, because of their good faith in their dealings.
Finally, I will discuss the findings of the Board of Adjustment. It is hornbook law that the Board's decision must be founded within the statutory criteria and must be substantially grounded in competent evidence. Bierce v. Gross, 47 N.J. Super. 148 (App. Div. 1957). The present findings by the Board of Adjustment, as evidenced by its *295 resolution, merely recite the statutory language and are without any basis in the record. The Board reached no basic factual determination; its decision is nothing more than the statement of an ultimate finding without foundation in the record and is, therefore, arbitrary and unreasonable.
The record before the Board of Adjustment could lead it to no other conclusion but that plaintiffs would suffer undue hardship if denied relief; that the variance could be granted without substantial detriment to the public good; and that it would not substantially impair the intent and purpose of the zone plan and ordinance.
The action of the Board of Adjustment is therefore reversed and it is directed to grant the variance requested. Counsel for plaintiffs will present an appropriate order.