77 N.J. Super. 138 (1962)
185 A.2d 673
CLARENCE A. SMITH AND THELMA SMITH, PLAINTIFFS-RESPONDENTS,
v.
ALBERT PAQUIN, BUILDING INSPECTOR, THE ZONING BOARD OF ADJUSTMENT AND THE MAYOR AND COUNCIL OF THE BOROUGH OF FAIR LAWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1962.
Decided November 15, 1962.
*139 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Morton Hirschklau, Legal Assistant, argued the cause for appellants (Mr. Floyd V. Amoresano, attorney; Mr. Hirschklau, on the brief).
Mr. I. Louis Logan argued the cause for respondents.
*140 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from a Law Division judgment setting aside the Fair Lawn board of adjustment's denial of plaintiffs' application for a variance, directing the board to grant the variance, and ordering the building inspector to issue a building permit after the board had acted.
Plaintiffs Clarence and Thelma Smith are the owners of two adjacent 20' x 100' lots located on the east side of Elizabeth Street in the Borough of Fair Lawn, 234.36' north of Union Street. Clarence's parents had acquired the lots in 1928, when the borough had no zoning restrictions. In April 1961 the father conveyed the premises to plaintiffs. Defendants do not contest that this conveyance was by way of gift.
It appears that the borough first adopted zoning in 1933. At that time the premises in question were placed in a residential zone where building lots had to have a 50' minimum frontage. A 1954 ordinance amendment established the following minima for lots in that zone: 7,500 square foot area, 75' frontage, 100' depth, 30' setback and 12' sidelines.
On July 20, 1961 plaintiffs contracted to sell their 40' x 100' lot to Lawn Holding Co., Inc., for $2,500, subject to their obtaining a variance which would permit the erection of a dwelling in conformance with the building code. The contract was to be considered null and void if such a variance could not be obtained. Plaintiffs applied to defendant building inspector on September 7, 1961 for a permit to construct a dwelling measuring 21.67' x 46', with a setback of 25' and sidelines of 10' and 8.33', respectively. He denied the application because the building would violate the minimum requirements of the zoning ordinance. Plaintiffs immediately appealed to defendant board of adjustment, requesting a variance under N.J.S.A. 40:55-39(c) from the lot dimension and sideline requirements. (No mention was made of the setback requirement.) The board held a hearing and at the close of the testimony denied plaintiffs' application.
*141 Plaintiffs then filed a complaint in lieu of prerogative writs in the Law Division demanding judgment setting aside the zoning ordinance as unreasonable and arbitrary insofar as it regulated their property; reversing the refusal of the board of adjustment to grant a variance, and requiring defendants to issue plaintiffs a permit to erect a one-story residence in accordance with the plans and specifications theretofore submitted. Defendants answered, and both sides then filed cross-motions for summary judgment. The matter was submitted on the pleadings, the record and transcript of testimony taken before the board of adjustment, affidavits and briefs. The Law Division judge found that plaintiffs had established undue hardship under the statute and concluded that they should have been permitted to erect a dwelling on their lot with side yards of 10' and 8.33', in conformance otherwise with the borough building code. Although counsel for defendants pointed out to the trial judge that the board had never acted on the side yard variance, the court proceeded to enter the judgment under appeal.
The "Schedule of Bulk Requirements" forming part of the zoning ordinance prescribes, among other things, minimum lot area and dimensions, and minimum front, side and back yard dimensions in each of the six several residential zones of the borough. Section IX of the ordinance, entitled "Supplementary Regulations," provides:

"A. USES.

* * * * * * * *

5. DWELLINGS ON SMALL LOTS.
When lot or lots within a residential district on one side of a street have dimensions which do not conform to the minimum lot area and or minimum lot dimensions required by this ordinance and there is a pronounced uniformity of dwellings on said side of the street which exist on lots with lot area and/or lot dimensions which do not conform with the terms of this ordinance, then the Board of Adjustment may upon application in any individual case grant an exception to said minimum requirements provided that
A. the applicant demonstrates it is impossible to acquire additional land for a reasonable price or at all so as to comply with said minimum requirements, and
*142 B. that no exception be granted to permit the use of a lot or lots less than 50 feet in width and 5,000 sq. feet in area, and
C. that the granting of such exception will not be detrimental to the health, safety and general welfare of the community."
The record of the zoning board hearing clearly reveals that subparagraph B of the quoted text loomed large in the minds of the board members. The chairman observed that the board could not grant a variance for a 40' x 100' lot  a minimum of 50' x 100' was required. When counsel insisted that plaintiffs had a right to apply for a variance under N.J.S.A. 40:55-39(c) because of hardship under the existing circumstances, one of the board members again noted that subparagraph B set a minimum standard below which the board could not go.
The board did not confer after the close of the testimony; instead, a board member immediately offered a resolution reciting that approval of plaintiffs' application would destroy the zoning pattern, result in serious impairment of the intent and purpose of the zoning ordinance, and be detrimental to the health, safety and general welfare of the community  an obvious gloss on the negative provisions of N.J.S.A. 40:55-39. However, the heart of the resolution, and the thought which obviously predominated in the minds of the board members, was subparagraph B. The resolution recites that approval of a variance "would be in direct disregard with Section IX5B, which establishes a minimum standard by prohibiting the granting of an exception to permit a dwelling on a lot having a frontage of less than 50 feet." Considering itself bound by the limiting provision of subparagraph B, the board did not pass upon the question of hardship nor fix the setback or sideline dimensions for the house plaintiffs proposed to build.
It is argued on behalf of defendants that subparagraph B, prohibiting the board of adjustment from granting any variance (the ordinance uses the word "exception") from the minimum requirements, so as to permit the use of a lot measuring less than 50' in width and 5,000 square feet in area, *143 represents a valid exercise of the municipal zoning power. We are cited to cases upholding certain minimum dimensions and specific use requirements, but the issue in those cases was whether the ordinance provisions were reasonable. By contrast, what concerns us here is whether the municipal governing body could limit, in the manner it did, the discretion of its zoning board to grant a variance even where exceptional hardship is shown.
The Fair Lawn governing body did not have the power to adopt a provision like subparagraph B. To hold otherwise would diminish the authority granted a zoning board by N.J.S.A. 40:55-39(c) to grant a variance from "the strict application of any regulation" enacted pursuant to the Zoning Act where, "by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition" of the property, such strict application "would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property." Carrying defendants' argument to its logical extreme, a governing body could adopt a zoning ordinance which would prohibit the board from granting exceptions where the property did not meet the requirements of the "bulk schedule," and as long as the schedule itself was reasonable, the board could not consider any claim of hardship.
We conclude that the Fair Lawn board had the power to proceed in the particular circumstances of this case, despite subparagraph B, for its discretion to grant a variance derives directly from the statute.
Defendants' brief suggests that subparagraph B lends itself to a valid construction: although the board's discretion under N.J.S.A. 40:55-39(c) is eliminated, it may still (upon proper application being made) recommend to the governing body the grant of a variance for "special reasons" under N.J.S.A. 40:55-39(d). There is no merit in this contention. Subsection (c) of the statute relates to variances where *144 the structure or use is permitted in the particular zone; it expressly provides that no variance may be granted where such structure or use is not permitted. On the other hand, subsection (d) relates to the granting of a variance where the structure or use is not permitted in the district. The present case is classically a situation covered by N.J.S.A. 40:55-39(c). Indeed, plaintiffs' application, and the board's consideration thereof, was based upon the provisions of that subsection.
Plaintiffs, through their witnesses, attempted to establish hardship peculiar and exceptional to their plot, and to show that a variance could be granted without substantial detriment to the neighborhood. They also sought to establish that they had tried to sell their two 20' lots for $2,500 to their neighbor on the north, who owned four such lots, purchased at $1,400 each and on which he was about to build. The neighbor said he was not in a financial position to buy at the time. They also established that the neighbor to the south, who had a 120' frontage, was unwilling to sell any part of her holdings. These two neighbors, as well as three other property owners nearby, appeared before the board to object to the grant of the requested variance.
The case will have to be remanded for a fuller hearing and determination by the Fair Lawn board. However, we deem it advisable to pass upon one or two matters which may be raised at the new hearing and should be decided now for the guidance of the board.
Plaintiffs stress that when title was taken by Clarence's parents in 1928 there were no zoning restrictions on the property, and that they (plaintiffs) were not purchasers but donees under the 1961 deed of gift. They speak of the 1954 zoning ordinance restrictions as "retroactive," thus suggesting that the right which the parents would have had to a variance passed to them.
In Ardolino v. Florham Park Board of Adjustment, 41 N.J. Super. 582, 591 et seq. (App. Div. 1956), the dissenting judge was of the opinion that the right of a pre-zoning ordinance *145 owner to a variance should pass with the title, even to a purchaser who bought after the zoning ordinance and with knowledge of it. Although the Supreme Court adopted much of the dissenting opinion (Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957)) in its reversal of this court, it expressly rejected the idea of having a variance pass with the title. Speaking through Chief Justice Vanderbilt, the court said:
"* * * There are circumstances that we can conceive in which a purchaser from [the pre-ordinance owner] should not be entitled `incontestably' to a variance and that it would be beyond the intention of the statute to grant it. The cases arising must be considered each on their own facts as they arise without any rights of prior owners tacked on. If this were not the case, the spirit of the zoning act which is to limit departures from the literal requirements of zoning ordinances would be quickly thwarted, for the accumulation of such rights would tend to call for variance far beyond the point where for the public good and welfare they should have ended. We therefore think it a better rule, as we have said, that each case be considered for itself in the search for the necessary undue hardship." (24 N.J., at page 107)
The fact that plaintiffs took by gift from owners who could have obtained a variance does not necessarily entitle them to such a variance. This case, as was said in Ardolino, must be considered on its own facts, without the rights of Clarence's parents tacked on.
Plaintiffs refer to our decisions in Kryscnski v. Shenkin, 53 N.J. Super. 590 (1959), and Burke v. Spring Lake Board of Adjustment, 52 N.J. Super. 498 (App. Div. 1958), in support of their position. But in those cases the plaintiffs acquired title long before the zoning ordinance was amended to require a minimum frontage greater than they possessed. And see Ardolino, above, and DeMoss v. Watchung, 137 N.J.L. 503 (Sup. Ct. 1948).
Plaintiffs will undoubtedly again present at the new hearing before the board of adjustment the fact that they made bona fide efforts to sell their two lots, or to acquire frontage from the neighbors to the north and south sufficient *146 to give them the minimum width required under the zoning ordinance. Such efforts will be of some weight in determining undue hardship. But see Kryscnski v. Shenkin, above, 53 N.J. Super., at page 599.
That plaintiffs seek a variance in order to be able to sell the property under their contract with Lawn Holding Co. is of no moment, since they are entitled to get their economic value out of their holdings. Kryscnski, above, at page 598. The zoning board should give no consideration to this factor.
We have noted that the resolution denying plaintiffs a variance referred, in part, to the fact that approval of the application would destroy the zoning pattern, seriously impair the intent and purpose of the zoning ordinance, and be detrimental to the health, safety and general welfare of the community. The testimony in support of these conclusions was skimpy. The record gives us an inadequate idea of the nature of the immediate area and the residential zone in question  the location and dimensions of vacant and improved lots, and the quality and value of dwellings which might be affected adversely by plaintiffs' proposed one-story house. These matters should clearly be delineated in the testimony to be taken on the remand, accompanied, if at all possible, by a detailed lot and residence map of the zone.
Our suggestion as to what the zoning board should inquire into is not to be understood as limiting in any way consideration of other matters relative to whether plaintiffs are entitled to a variance under N.J.S.A. 40:55-39(c). As we have observed, the core question under that section is whether there has been a showing of peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the property owner. It is plaintiffs' burden to establish this, and to show that the variance they seek may be granted without substantial detriment to the public good or substantial impairment of the intent and purpose of the zoning plan and zoning ordinance. The zoning board, on remand, should make clear and specific findings of fact as to each of these elements, and not resort to a mere repetition, *147 entirely conclusory, of the statutory language. In passing upon the requested variance, it should also consider all of the variances necessary in the circumstances: lot area and dimensions, setback, and side and back yard requirements.
Reversed and remanded for a new hearing before the zoning board of adjustment in accordance with this opinion.