78 N.J. Super. 74 (1963)
187 A.2d 605
CARL HOLMAN, PLAINTIFF-RESPONDENT,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF NORWOOD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1962.
Decided January 10, 1963.
*75 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Karl Z. Sosland argued the cause for appellant (Mr. Robert D. Gruen, attorney; Mr. Frederick L. Bernstein, on the brief).
Mr. Herbert G. Draesel argued the cause for respondent (Mr. Gerald Breitenstein, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
This is a zoning case which involves the issue of plaintiff's right to a variance under N.J.S.A. 40:55-39(c) to erect a single-family dwelling upon an undersized plot of land. Defendant Board of Adjustment of the Borough of Norwood (hereafter board) denied the requested variance, holding (1) the applicant failed to establish "any hardship," and (2) the erection of the proposed dwelling on plaintiff's limited property area would seriously impair the intent and purpose of the zoning ordinance and would result in substantial detriment to the public good.
*76 A proceeding in lieu of prerogative writs thereon initiated by plaintiff Carl Holman in the Superior Court, Law Division, resulted in a finding that "a hardship does exist." The trial court reversed the board's determination and entered a judgment that "the defendant, the Board of Adjustment of the Borough of Norwood, shall issue the necessary variance." Appealing that judgment the board contends the granting of the variance sought by plaintiff contravenes the proven facts and the applicable law.
In 1941 plaintiff purchased, at a cost of $25, a tax title certificate encumbering the subject property and, in 1947, through subsequent tax lien foreclosure proceedings acquired title thereto. At that time the municipal building restrictions did not limit the lot size for dwelling construction. The property consists of eight 20' x 100' parcels, known as Lots 9 through 16, Block 183, West Section Yorkview in the Borough of Norwood. They represent a total area of 16,000 square feet  160' frontage on Fifteenth Street with a depth of 100'. Plaintiff has never owned any lands contiguous to his eight lots in question, although he did possess title to Lots 24 to 28, inclusive, fronting Fifth Avenue at the north end of Block 183.
That entire block, situate in an undeveloped wooded section of the municipality, is a part of the "R-40 residential zone" subject to a comprehensive zoning ordinance which limits the area to a residential development with a minimum lot size requirement of 40,000 square feet and minimal lot dimensions of 150' x 150' for construction of a one-family dwelling. There are 23 lots in Block 183 facing Fifteenth Street, and to the rear of these lots is a ten-foot "map sidewalk" easement separating them from the rear of 23 similar lots in Block 184, fronting Sixteenth Street. The easement strip is perpendicular to a comparable ten-foot dedicated access strip to the north forming the rear boundary of ten lots on Fifth Avenue. The borough owns all of the lands in Block 184. In Block 183 the eight lots abutting plaintiff's property on Fifteenth Street and to the south side thereof are owned by *77 one Scott. They were not available for sale. Four adjacent lots on the north side were owned by Isaac Sanger, who was a willing seller at the asking price of $3,500.
The stenographic record of the board's rehearing reveals that the only proffered testimonial evidence was that of plaintiff himself, and a Raymond E. McKenna on behalf of the board. McKenna, a borough councilman and "chairman of property," testified that the borough property in Block 184 was for sale, saying:
"* * * we would like to protect our zoning ordinance as much as possible. I would not recommend to the governing body to sell any land in 184 unless someone in 183 who owned the land in 183 wanted to conform as much as possible to our zoning in that area, which is one acre. I would not sell it as a building part of 184. I would sell it contiguous to other lands that are owned in Block 183."
He referred to dwellings in the R-40 zone which conform with the ordinance restrictions and to others which nearly conform, and voiced the opinion, if Holman were to be permitted to build on "as small an area" as he now owns, it would "not only be detrimental as far as the zoning ordinance * * * but I believe it would also be detrimental to the people who own property in [Blocks] 185 and 186." He indicated that for the sum of $1,500 plaintiff could purchase lots in Block 184 (to the rear of Lots 9 to 16 in Block 183) equivalent to his present property, plus the intervening ten-foot sidewalk easement region, which would give Holman sufficient square footage to represent "as much as possible" a substantial compliance with the ordinance. The fairness of the suggested price was not disputed.
Plainly, the refusal of plaintiff to negotiate with the borough for the acquisition of additional lands to equal or approximate zoning conformity was a dominant factor in the board's deliberations. The minutes of the board (January 24, 1961) contain a motion "that Appeal #168 of C. Holman be denied inasmuch as no appreciable effort had been made on the part of the applicant to acquire property from the Borough." *78 At the conclusion of a second hearing (July 13, 1961), held pursuant to remand by the trial court for a more adequate record, there was adopted a resolution which recites in part:
"4. That the property is located adjacent to vacant contiguous land which vacant land is owned in part by the Borough of Norwood and in part by private party and both the Borough and the private party have expressed willingness to sell said land to the Applicant;
5. That the Applicant, Carl D. Holman, as judged by his demeanor and by his statements is not willing to purchase any additional land nor even to negotiate for purchase of same; * * *."
The ten-foot access easements in Blocks 183 and 184 had not been abrogated. We note, however, the testimony of McKenna that "the intentions of the governing body are to vacate all those strips in that area," and that in recent months the municipality had effected a vacation of analogous strip easements in other blocks in the immediate vicinity. At oral argument on this appeal counsel for the municipality reported that the divisional rights of way in Blocks 183 and 184 had now been vacated.
Holman's testimony was directed primarily to his nonconforming use status, the impracticability of the ordinance restrictions, and his asserted hardship. Parenthetically, we here observe that plaintiff did not attack in his "in lieu" proceedings the reasonableness of the zoning ordinance as it affects his particular property or the lands within the block in which his lots are located. Consequently, we do not pass on that question. (This court, as recognized by both counsel, recently had before it the zoning ordinance of the Borough of Norwood, which was challenged as being "arbitrary and unreasonable, and therefore void." The ordinance was sustained. However, there was no issue raised in those proceedings respecting the validity of the building restrictions applicable to the area now under consideration. Note opinion of Judge Goldmann, decided November 9, 1962, in the unreported case of Maceina v. Borough of Norwood (Docket A-539-61)).
*79 A pre-zoning ownership of an undersized parcel of land is not per se an "undue hardship" that incontestably justifies the granting of a variance. Inapposite are the reported decisions to which we have been cited by plaintiff, namely, Kryscnski v. Shenkin, 53 N.J. Super. 590 (App. Div. 1959), certification denied 29 N.J. 465 (1959); Burke v. Spring Lake Board of Adjustment, 52 N.J. Super. 498 (App. Div. 1958), and Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957). In Kryscnski plaintiffs owned an unimproved parcel of land with a 50' frontage by a 100' depth. It was situate between two adjoining lots on each of which a dwelling house had been erected. Several years after ownership had been acquired, the municipality, by an amendatory zoning ordinance, upgraded the minimum frontal building requirements from 50' to 75'. The neighboring property owners were unwilling to purchase plaintiffs' vacant lot. The Superior Court, Law Division, ordered the board of adjustment to grant a variance permitting plaintiffs to erect a one-family dwelling on their property. This court affirmed. Similarly, Burke and Ardolino dealt with nonconforming lots in a developed area. These cases stand for the proposition that a municipality cannot destroy the economic value of property by retroactive and prohibitory provisions of a zoning ordinance unless relief is available at the hands of the board of adjustment. They further lend emphasis to the cardinal rule that a board of adjustment in denying a permit and variance is presumed to have acted correctly and the burden of establishing the contrary is on the party challenging its decision. See generally, Editorial Notes, 9 Rutgers L. Rev. 697, 709 (1955); Cunningham, "Control of Land Use in New Jersey by Means of Zoning," 14 Rutgers L. Rev. 37, 86 (1959).
The question for determination is whether the denial was unreasonable, arbitrary or capricious. The function of this court is to review the circumstances and sustain the board's judgment "in the absence of an affirmative showing that it *80 was unreasonable, arbitrary or capricious." Rexon v. Board of Adjustment, Haddonfield, 10 N.J. 1, 7 (1952), approvingly quoted in Ardolino v. Florham Park Board of Adjustment, supra, 24 N.J., at p. 105.
In the search for the necessary undue hardship as contemplated by the statute, each litigated circumstance must be considered independently and upon its own factual merits. In the case sub judice plaintiff's property is in an undeveloped area where upgrading restrictions may have the potential capacity for value enhancement, rather than a detriment to, or destruction of, economic worth. While plaintiff made some inquiries, he did not evince any bona fide intent or effort to actually acquire additional lands to conform or approximate conformity with the ordinance requirement, and there was no indication of a willingness on his part to sell all or any part of his lot holdings. We do not infer that in every case the owner of an undersized lot in order to obtain a variance must establish unsuccessful efforts to buy adjacent land or to sell what he owns.
The instant case is not one where the denial of a variance would relegate the landowner's real estate to the status of "a lot" in perpetuity. Cf. DeMoss v. Borough of Watchung, 137 N.J.L. 503, 504 (Sup. Ct. 1948), and also Mischiara v. Bd. of Adjustment of Piscataway Tp., 77 N.J. Super. 288 (Law Div. 1962), in which an amended zoning ordinance (without a variance) rendered appellant's property "landlocked and completely unusable." There was no evidence adduced that the zoning requirements diminished the market value or salability of plaintiff's property. The proofs suggested the contrary. Where, as here, the local legislative body designed a comprehensive zoning pattern for an undeveloped area of the community, the availability and marketability of lands to make possible a conforming parcel are factors which may be considered by the board of adjustment in the discharge of its statutory functions.
N.J.S.A. 40:55-39 relates to the powers of the board of adjustment. In the concluding paragraph, following enumerated *81 subdivisions (a) (b) (c) and (d), there is an overriding provision that
"No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
The legislative mandate for negative findings is as much a sine qua non for relief under subdivision (c) as is the affirmative establishment of exceptional and undue hardship. Plaintiff's case before the local zoning agency did not comprehend the full scope of proofs essential to the granting of a variance. It was his burden to establish the statutory criteria. Tomko v. Vissers, 21 N.J. 226, 237 (1956). See also Betts v. Bd. of Adjustment of Linden, 72 N.J. Super. 213 (App. Div. 1962); Bierce v. Gross, 47 N.J. Super. 148 (App. Div. 1957); Preye v. Bd. of Adjustment, North Bergen Tp., 22 N.J. Super. 161 (App. Div. 1952), certification denied 11 N.J. 328 (1953). The board, in fact, specifically found otherwise, i.e., the neighborhood is "in a formative state substantially in compliance with the Zoning Ordinance," and to permit the erection of a one-family dwelling house on applicant's undersized property "would seriously impair the intent and purpose of the Zoning Ordinance and would result in substantial detriment to the public good."
The judgment of the trial court nonetheless laconically declared the existence of a "hardship," and reversed the board without making any determination or reference to the concomitant prerequisites of the statute respecting negative findings. Such critical findings are essential. Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245, 249 (1959). Ordinarily, we would consider a remand with the admonition recently stated by this court in Smith v. Paquin, 77 N.J. Super. 138, 146 (App. Div. 1962), that
"* * * the core question under that section [N.J.S.A. 40:55-39 (c)] is whether there has been a showing of peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the *82 property owner. It is plaintiffs' burden to establish this, and to show that the variance they seek may be granted without substantial detriment to the public good or substantial impairment of the intent and purpose of the zoning plan and zoning ordinance. The zoning board, on remand, should make clear and specific findings of fact as to each of these elements, and not resort to a mere repetition, entirely conclusionary, of the statutory language."
In view of a prior remand by the trial court, the present unsatisfactory record and the developments subsequent to the board hearings and the trial, we deem a further remand at this time to be inadvisable.
A reversal of the Law Division is indicated. However, the extenuating circumstances commend in the interest of justice that the reversal be without costs and without prejudice.
So ordered.