97 N.J. Super. 306 (1967)
235 A.2d 51
RICHARD D. GRAVES AND SHIRLEY A. GRAVES, HIS WIFE, PLAINTIFFS,
v.
BLOOMFIELD PLANNING BOARD, AN ENTITY OF TOWN OF BLOOMFIELD, AND TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND ROWBERT DEVELOPERS, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 19, 1967.
*308 Mr. George E. Davey for plaintiffs Richard D. Graves and Shirley A. Graves.
Mr. Joseph D. Lintott for defendants Town of Bloomfield and Bloomfield Planning Board.
*309 Mr. Milton M. Breitman for defendant Rowbert Developers, Inc. (Messrs. Levy, McCloskey & Schlesinger, attorneys).
ACKERMAN, J.S.C.
This action in lieu of prerogative writs was commenced by plaintiffs to contest the validity of the action taken by the Bloomfield Planning Board on November 15, 1966 in approving a major subdivision which affects a single, undeveloped lot (Lot 22, Block 963) and extends Wagner Street. It is claimed that the lot in question is an undersized lot, lacking the necessary width or street frontage required by the zoning ordinance of Bloomfield. The planning board approved the subdivision without requiring the granting of a variance by the Bloomfield Board of Adjustment. It is contended that the action of the planning board violates the zoning ordinance. It is further contended that if the ordinance is construed to permit the action of the planning board without the necessity of an application to the board of adjustment for a variance and the granting of the same by that board, the zoning ordinance is invalid.
In accordance with the provisions of the pretrial order entered in the cause, the pertinent facts were submitted to the court by agreement of the parties and they are not in dispute. The lot in question is in an R-5, Single Family Zone. It is the only unimproved lot in the immediate area and it is conceded that it has been owned by Rowbert Developers, Inc. since June 24, 1928, and that said owner has owned no adjoining land since prior to the adoption of the first zoning ordinance by Bloomfield in 1930.
Prior to subdivision the lot was triangular in shape measuring approximately 173.78 feet on its southerly side, by 84.70 feet on its easterly side, by 193.23 feet on its northwesterly side, and its total area was approximately 7,350 square feet. A part of the northwesterly line, i.e. the most westerly portion of the hypotenuse of the triangle, formed the existing southerly dead-end boundary of Wagner Street, running at an angle across that street. Wagner Street is a *310 short dead-end street running south from Watchung Avenue for approximately 270 feet.
The application to the planning board was classified as one for a major subdivision under the land subdivision ordinance of the town because an extension of Wagner Street is involved. As a part of the approved subdivision, the westerly portion of the lot forming the apex of the triangle, measuring approximately 64.77 feet by 31.04 feet by 70.83 feet, is to be deeded to the Town of Bloomfield, and said land will be used to extend Wagner Street approximately 31 feet and to "square off" its present dead end. The remaining lot will be trapezoidal in shape and will have a new westerly boundary fronting on the new easterly side of Wagner Street as extended. It will measure approximately 109.01 feet at its southerly side, 84.70 feet at its rear or easterly side, 122.40 feet at its northerly side, and 31.04 at its front or westerly side, bordering on Wagner Street. It will contain approximately 6,500 square feet. According to the preliminary sketch dated November 1966, the proposed dwelling to be constructed on the lot will have a forward building or setback line 47 feet from Wagner Street, and at that point the width of the lot will exceed 50 feet. It is claimed, however, that the lot does not meet the minimum zoning standard, because its width or street frontage at its boundary with Wagner Street is only 31.04 feet. As stated above, the Planning Board approved the subdivision without requiring application to the Board of Adjustment for a variance.
The Town of Bloomfield adopted its first zoning ordinance on November 17, 1930, at which time, as stated above, the lot in question was owned by its present owner as an isolated lot with no adjoining land. The existing ordinance was adopted on June 15, 1959. Its provisions as to minimum area requirements may be summarized as follows:
Section A (2) of Article VI, "Residential Zones", which relates to area requirements for lots in an R-5 zone, incorporates by reference the provisions of article III, "Schedule *311 of General Requirements". The latter article, in prescribing area regulations for each zone, states that they are "subject to the other provisions of this ordinance," and that said regulations shall be deemed to be minimum requirements. With respect to lots in R-5 zones, it provides:

 Lot Requirements Minimum Yard Requirements
 Principal Building
 Area Width Side
Zone Sq. Ft. Feet Front Rear One Both
R-5 5,000 50 25 20 6 14

It is clear that the new lot as subdivided will equal or exceed all the minimum area requirements for a lot in an R-5 zone except in its width. The lot area will exceed by 1,500 feet the minimum prescribed area of 5,000 square feet. The setback or front yard will be 47 feet as compared with the prescribed minimum of 25 feet. Its rear yard will be in excess of 30 feet as compared with a minimum requirement of 20 feet, and side yard requirements are complied with.
Although the ordinance requires that there must be a "lot width" of 50 feet and it is claimed that the lot is substandard because it has a street frontage on Wagner Street of only 31.04 feet, there is no express requirement in the ordinance that there be a minimum width or frontage at the street line of 50 feet. Although, section 2 of article VI, "General Requirements" provides that "every principal building shall be built upon a lot with frontage upon a public street," there is no specific provision for a minimum street frontage measured in feet. The term "frontage" is not defined in article II, "Definitions," which contains 39 sections defining terms used in the ordinance. Section 22, which specifically defines "Lot Width," provides:
"22. Lot width. The mean horizontal distance between the side lot lines measured at right angles to its depth. In no case shall the lot width be less than the frontage as required by this ordinance. Frontage shall be measured at the most forward allowable building or setback line."
*312 Since the lot in question measures 31.04 feet at the front street line and 84.70 feet at its rear line, the mean or average width of the lot, within the meaning of the first sentence of the above definition, is 57.87 feet and exceeds the minimum. The term "frontage" as used in the definition is meaningless unless it is used as a synonym for "width" as distinguished from "street frontage," since such frontage is to be measured at the "most forward allowable building or setback line." Cf. Tzeses v. Barbahenn, 125 N.J.L. 643 (E. & A. 1941). As provided in section 37 of article II, "setback line shall be synonymous with the front yard," and the minimum front yard under the "Schedule of General Requirements" is 25 feet.
There were no arguments presented by the parties as to what constitutes the most forward "allowable building or setback line" of the new lot within the meaning of the above section, nor was specific evidence presented as to its exact width at points other than the front and rear lot lines. However, mathematical computations based upon data shown on the preliminary sketch of the subdivision approved by the planning board indicate that, although the width at the actual building and setback line located 47 feet back from the street is approximately 53 feet, the width at a setback point 25 feet from the street line (i.e., the minimum front yard) is approximately 43 feet.
If the lot is in fact not substandard, plaintiffs obviously would not be entitled to relief. Restrictions in zoning ordinances must be clearly expressed and doubts are resolved in favor of the property owner. N.Y. Central R.R. v. Borough of Ridgefield, 84 N.J. Super. 85 (App. Div. 1964). Applying this standard, the ordinance cannot reasonably be construed to require a minimum street frontage of 50 feet, and the lot is not substandard because it measures only 31.04 feet at the street line. However, although the mean width is in excess of 50 feet and its width at the actual building or setback line is in excess of 50 feet, the lot would appear to be substandard because it is less *313 than 50 feet wide at the minimum setback line. All the parties, including the planning board and the Town of Bloomfield, have assumed that the lot is substandard as to width, and for the purpose of this decision the court assumes that the lot is substandard because it is less than 50 feet wide at the minimum setback line. For the reasons set forth hereinafter, plaintiffs would not be entitled to the relief sought, even if the lot were in fact substandard because the street frontage is only 31.04 feet.
Section 12 of article VI, "General Requirements," provides a specific exemption for undersized lots as follows:
"12. Use of undersized lots existing prior to adoption of ordinance.
Any parcel of land with an area or width less than that prescribed for a lot in the zone in which such lot is located, which parcel was under one ownership at the date of the adoption of this ordinance, when the owner thereof owns no adjoining land, may be used as a lot for any purpose permitted in the zone other than multiple dwellings; provided, that all other regulations prescribed for the zone by this ordinance are complied with."
This provision is clearly applicable to the lot in question and by its plain terms provides a general exemption, for undersized lots held in single ownership at the time of the adoption of the zoning ordinance, from the necessity of compliance with the minimum standards as to width and area provided for in article III. It is clearly one of the "other provisions" of the ordinance, referred to in general terms in article III, subject to which the general minimum regulations prescribed in that article were promulgated. The essence of the provision is that such undersized lots are considered standard and in compliance with the zoning ordinance, even though deficient as to lot width or area. No provision is made for application to the board of adjustment for a variance. A qualifying applicant is entitled to a building permit as a matter of right so far as zoning requirements are concerned, and there is no reason or necessity for the securing of a variance.
*314 Although it is clear that "[a] municipal planning board is bound by express provisions in the local zoning ordinance and may not approve subdivisions violative of such express provisions," Popular Refreshments, Inc. v. Fuller's Milk Bar, etc., 85 N.J. Super. 528, 536 (App. Div. 1964), certification denied 44 N.J. 409 (1965), the planning board acted here in compliance with the zoning ordinance and did not usurp the functions of the board of adjustment. It was not necessary that it make its approval of the subdivision contingent upon the granting of a variance by the board of adjustment, nor that it withhold action upon the subdivision application until a variance had been granted. Cf. Imperato v. Tenafly Zoning Board of Adjustment, 91 N.J. Super. 540, 545 (App. Div. 1966); Mac Lean v. Brick Tp. Planning Board, 94 N.J. Super. 288 (App. Div. 1967); 21 N.J. Practice (Ackerson and Fulop, Skills and Methods (1960)) § 2494, p. 59. Plaintiffs' claim that the action of the planning board was violative of the terms of the zoning ordinance is therefore without foundation.
Plaintiffs' contention that this section of the zoning ordinance is invalid because it dispenses with the necessity of securing a variance from the board of adjustment is also without merit.
It is, of course, well settled that it is presumed that the ordinance is valid and that the burden of proof is upon plaintiffs to establish its unreasonableness and invalidity. Vickers v. Gloucester Township Committee, 37 N.J. 232 (1962). Plaintiffs have not met this burden. Although substandard in width, the lot in question meets or exceeds all other minimum area requirements. As disclosed by an examination of Map 35, its rear width of 84.07 feet exceeds the rear dimension of the two lots which abut it in the rear, both of which have 40-foot street frontages on Bell Street and total areas of approximately 4,000 feet. On its southerly side it will border on several lots facing on Doris Avenue which have street frontages on that street of approximately 38 feet and total areas of less than 4,000 feet. The great *315 majority of the lots in neighboring blocks have street frontages of 38.33 to 40 feet with depths not in excess of 100 feet, and the lot in question will have a total square foot area greater than that of a good portion of the lots in the vicinity.
It is clear that if this lot, located in a single-family residential zone, cannot be used for construction of the proposed dwelling, it will for all practical purposes be useless. It is settled in this State, as well as in other jurisdictions, that a municipality may not destroy the economic value of an isolated lot by retroactively prohibiting the erection thereon of a single-family dwelling through adoption of a zoning ordinance prescribing minimum lot size requirements unless relief is available to the owner of such undersized lot. Otherwise, the restriction against such use is plainly a taking of the property without just compensation. Relief is customarily provided by an exemption in the zoning ordinance or by the availability of relief by application for a variance from the board of adjustment. It is clear on the facts of this case that, if the owner had been required by the terms of the zoning ordinance to apply for a variance, such variance could not have reasonably been denied. Griffin Construction Corp. v. Teaneck Board of Adjustment, 85 N.J. Super. 472 (App. Div. 1964), certification denied 44 N.J. 408 (1965); Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957); DeMoss v. Borough of Watchung, 137 N.J.L. 503 (Sup. Ct. 1948); Rodee v. Lee, 14 N.J. Super. 188 (Law Div. 1951); Burke v. Borough of Spring Lake Board of Adjustment, 52 N.J. Super 498 (App. Div. 1958); Kryscnski v. Shenkin, 53 N.J. Super. 590 (App. Div. 1959), certification denied 29 N.J. 465 (1959); see Beers v. Wayne Tp. Board of Adjustment, 75 N.J. Super. 305 (App. Div. 1962); Smith v. Paquin, 77 N.J. Super. 138 (App. Div. 1962); Mischiara v. Piscataway Tp. Board of Adjustment, 77 N.J. Super. 288 (Law Div. 1962); see Holman v. Borough of Norwood Board of Adjustment, 78 N.J. Super. 74 (App. Div. 1963); *316 Mac Lean v. Brick Tp. Planning Board, 94 N.J. Super. 288 (App. Div. 1967); see Wilson v. Borough of Mountainside, 42 N.J. 426, 452 (1964).
As indicated by the foregoing cases, most of the reported decisions in this State involving relief for owners of undersized lots have construed zoning ordinances which required use of the variance process. It is not mandatory, however, that relief be granted only by application for variance to a board of adjustment. A municipality may grant relief to owners of preexisting undersized lots by granting a general exemption in the zoning ordinance and thus dispense with the expenditure of time and money involved in an application for a variance. If the owner establishes that he is within the exemption, he is entitled to relief as a matter of right so far as area requirements are concerned, and no application for a variance is necessary. The rule is stated in 1 Rathkopf, Law of Zoning and Planning (3d ed. 1964), c. 32, pp. 32-1, 32-3, as follows:
"Provisions in zoning ordinances establishing minimum lot areas and minimum width, or frontage of lots, upon which dwellings may be erected have generally been upheld as a means of regulating the density of population and of assuring a desired quantum of light and air to the inhabitants of such dwellings. However, such provisions are invalid as to lots which, at the time of the enactment of such restrictions, are substandard, i.e., having a smaller size or having a lesser frontage than the required minimum, if such lots would thereby be rendered completely valueless. An ordinance having such effect is unconstitutional. * * *

* * * * * * * *
In recognition of the doubtful validity of the restriction as applied to sub-standard lots existing at the time of passage of the ordinance, most ordinances specifically exempt lots having less than the required frontage on the effective date of the ordinance. A similar exemption of a minimum frontage requirement is often provided in favor of lots that are at least of a specified, although sub-standard, width. Where the latter provision is met, that is, where a lot, while not having a frontage equivalent to that set forth in the ordinance as to the generally required frontage, nevertheless is at least equal to the lesser frontage contained in the exception, there is a legal right to a permit under the terms of the ordinance. * * *"
*317 The same author states (c. 32, p. 32-12):
"As planning and zoning techniques become better understood and more frequently applied in quest of the development of better communities, with consequent larger minimum lot areas and frontage, the result will be to render more lots substandard. The burden is thrown first upon the draftsman of the ordinance to cover as many reasonably predictable contingencies as possible, secondly upon the administrative officer to construe the ordinance provisions with respect to a particular parcel to determine whether, under the exemption provisions the lot may be used as of right, thirdly upon the boards of appeal, acting either with respect to interpretation of the ordinance or upon an application for a variance, and finally, upon the courts. The problem is one of balancing the rights of the community against the property rights of the individual and if relief is not provided either through the exemption in the ordinance or through the board of appeal, a determination of unconstitutionality is inevitable. * * *"
The following general rule is stated in a recent annotation, "Validity and construction of zoning regulations prescribing a minimum width or frontage for residence lots," 96 A.L.R.2d 1367, 1368 (1964):
"Most zoning ordinances and statutes grant boards of appeal, review, or adjustment authority to vary the application of provisions thereof, in accordance with specific or general rules therein contained, and many zoning ordinances contain specific exceptions to their provisions, either enumerating the exceptions or authorizing the board to grant an exception where certain conditions are found to exist. Broadly speaking, the basic difference between a variance and an exception is that a variance is generally authorized for the purpose of relieving in a particular case against practical difficulties or unnecessary hardship in the way of strict enforcement of zoning regulations, and upon finding that such extrinsic conditions exist, the board, in its sound discretion, may disregard a literal enforcement of the ordinance and permit a variance, whereas the conditions for an exception must be found in the ordinance and may not be varied, and where the conditions so detailed are found to exist an exception is allowable as of right. * * *"
Section 12 of article VI of the Bloomfield zoning ordinance, in accordance with the accepted and customary practice indicated above, provided for an exemption and thereby dispensed, to the extent of the exemption granted therein, with the necessity of applying for a variance. The owner of *318 the lot in question clearly qualifies thereunder and, so far as zoning is concerned, is entitled to a building permit as a matter of right and the planning board properly so concluded. It was not necessary under this ordinance that planning board relief be conditioned upon the granting of a variance by the board of adjustment any more than the granting of a variance is necessary for the continuance of a nonconforming use under the ordinary zoning ordinance. See North Bergen Tp. in County of Hudson v. Thomas S. Lee Enterprises, Inc., 75 N.J. Super. 17, 21 (App. Div. 1962); National Lumber Products Co. v. Ponzio, 133 N.J.L. 95, 96 (Sup. Ct. 1945).
The provision for exemption by the municipality in the zoning ordinance was within its powers under the enabling act and, on the facts of this case, is clearly reasonable and valid. See Burke v. Borough of Spring Lake Board of Adjustment, 52 N.J. Super. 498, 503 (App. Div. 1958); DeMoss v. Borough of Watchung, 137 N.J.L. 503 (Sup. Ct. 1948); Schultz v. Town of Berlin Zoning Board of Appeals, 144 Conn. 332, 130 A.2d 789 (Sup. Ct. Err. 1957); Hill v. Busbia, 217 Ga. 781, 125 S.E.2d 34, 93 A.L.R.2d 1241 (Sup. Ct. 1962); Long Island Land Research Bureau, Inc. v. Young, 7 Misc.2d 469, 159 N.Y.S.2d 414 (Sup. Ct. 1957); Vit-Al Building Corp. v. Eccleston, 7 A.D.2d 737, 180 N.Y.S.2d 652 (App. Div. 1958); Flanagan v. Zoning Board of Appeals, 2 Misc.2d 922, 149 N.Y.S.2d 666 (Sup. Ct. 1956), affirmed 1 A.D.2d 979, 151 N.Y.S.2d 618 (App. Div. 1956); Creamer v. Young, 16 Misc.2d 676, 184 N.Y.S.2d 10 (Sup. Ct. 1959); Terra Homes, Inc. v. Michaelis, 30 Misc.2d 862, 219 N.Y.S.2d 345 (Sup. Ct. 1961); Feldman v. Commerdinger, 26 Misc.2d 221, 213 N.Y.S.2d 484 (Sup. Ct. 1960); see Sorenti v. Board of Appeals of Wellesley, 345 Mass. 348, 187 N.E.2d 499, 96 A.L.R.2d 1361 (Sup. Jud. Ct. 1963); 8 McQuillin, Municipal Corporations (3d ed. 1965), § 25.140a, p. 458; § 25.160, p. 512 et seq.; 58 Am. Jur., Zoning, § 196, p. 1046.
*319 A judgment will be entered in favor of defendants dismissing the complaint and denying the relief sought by plaintiffs.